**EXHIBIT "M"**

**U.S. ACCU-MEASUREMENTS, LLC AND
ROSS CONSULTING GROUP, INC.
V.
RUBY TUESDAY, INC.**

**ECONOMIC DAMAGES REPORT
AUGUST 15, 2011**



**WISS**
ACCOUNTANTS
CONSULTANTS

S.M. Chris Franzblau, Esq.
Franzblau Dratch, P.C.
354 Eisenhower Parkway
Livingston, New Jersey 07039

   *Re:* *U.S. Accu-Measurements, LLC and Ross Consulting Group, Inc., Plaintiffs*
      *v.*
    *Ruby Tuesday, Inc., Defendants*
    *Docket No. L-7101-10*

We have been retained by you to prepare an economic damages report for U.S. Accu-Measurements, LLC and Ross Consulting Group, Inc. in connection with the litigation currently pending between U.S. Accu-Measurements, LLC and Ross Consulting Group, Inc. and Ruby Tuesday, Inc. in the United States District Court for the District of New Jersey.

We have not audited or reviewed the accompanying financial information and, accordingly, do not express an opinion or any other form of assurance on it. The scope of our engagement was limited to information provided by you and/or U.S. Accu-Measurements, LLC and Ross Consulting Group, Inc.

Based on details submitted herewith, it is our opinion that U.S. Accu-Measurements, LLC and Ross Consulting Group, Inc. suffered total economic damages of $1,143,683 as a result of the breach of contract. No consideration has been given to possible additional economic damages for any future period.

This report has been prepared solely to assist you in connection with the above referenced litigation and is not to be used for any other purpose.

We reserve the right to modify our Report should additional information become available.

This report is subject to the assumptions and limiting conditions presented in Appendix A.

        *Wiss & Company*

        WISS & COMPANY, LLP

        Lawrence R. Chodor, CPA/ABV, CVA, CFF

        Joseph L. Ottaiano, CPA

Livingston, New Jersey
August 15, 2011

**WISS & COMPANY, LLP** • 354 Eisenhower Parkway, Livingston, NJ 07039 • Phone: 973.994.9400 • Fax: 973.992.6760

LIVINGSTON • ISELIN • FLEMINGTON • NEW YORK
www.wiss.com

## U.S. ACCU-MEASUREMENTS, LLC AND ROSS CONSULTING GROUP, INC.
### V.
### RUBY TUESDAY, INC.

### ECONOMIC DAMAGES REPORT

I. **INTRODUCTION**

The purpose of this report is to calculate the economic damages suffered by U.S. Accu-Measurements, LLC and Ross Consulting Group, Inc. ("USAM/RCG") as a result of the actions by Ruby Tuesday, Inc.

II. **BACKGROUND**

USAM/RCG are joint venture partners who provided, pursuant to written agreements (Exhibits 1 and 2) dated May 29, 1998 and dated October 24, 2000, respectively, with Ruby Tuesday, "Commercial Lease Analytical and Space Cost Occupancy Verification Services" in connection with leaseholds Ruby Tuesday, Inc. held with various landlords, including but not limited to Simon Property Group ("Simon").

USAM/RCG's remuneration was based on any refund or the cost reductions Ruby Tuesday received from landlords as a result of the services provided by USAM/RCG whether the refund and cost reductions were received "in cash, kind or by way of rental credit." USAM/RCG was to be paid 50 percent of the gross recovery of any benefit the landlord of the facility provided to the lessee (Ruby Tuesday) from the date of inception of any subject lease to the current year under analysis. USAM/RCG were also to receive 25 percent of the gross recovery that Ruby Tuesday received from landlords, whether by adjustments or collections of overcharges for no more than five years into the future.

Since 1998, USAM/RCG devoted thousands of hours to review and analyze leases in order to uncover overcharges and issue reports to Ruby Tuesday or its landlords that established numerous overcharges. Claims related to 17 Company-owned restaurants and 14 franchise units were forwarded to Simon. The value of the claim through 2008 was $1,052,000 and is noted in the Interrogatory #7 attached to the Plaintiffs' Objections and Responses to Defendant's Interrogatories (First Set).

USAM/RCG has not received remuneration in connection with the above referenced claims. However, Ruby Tuesday has utilized these audits to secure financial benefits to itself in cash, or in the form of altered lease terms and conditions, specifically lease termination payments in 2009 totaling $2,015,000 on seven Ruby Tuesday locations that have been closed. The lease termination agreements ceased any rental payments by Ruby Tuesday beyond August 31, 2009 for six (6) of the properties and January 31, 2010 for the remaining location. These seven (7) locations lease expiration dates ranged from January 31, 2010 to August 31, 2015 with total rent still due and payable through these lease expiration dates totaling $4,258,128. See Exhibits 3 through 7 for Summary of Lease Buyouts and Calculated Savings along with the supporting documents.

2

## U.S. ACCU-MEASUREMENTS, LLC AND ROSS CONSULTING GROUP, INC.
## V.
## RUBY TUESDAY, INC.

### ECONOMIC DAMAGES REPORT

The Complaint filed by Franzblau Dratch on behalf of USAM/RCG asserts that "Ruby Tuesday advised Plaintiffs that it had resolved the $1,052,000 claim against Simon in exchange for other benefits. Ruby Tuesday stated further that the global settlement that was reached with Simon precluded Ruby Tuesday from pursuing any other claims Plaintiffs presented to Ruby Tuesday. Plaintiffs received no remuneration from Ruby Tuesday, even though Ruby Tuesday received benefits from the global settlement." The Complaint further asserts that, "Ruby Tuesday's failures to pursue claims or pay Plaintiffs constituted a breach of the agreement between Plaintiffs and Ruby Tuesday, and damaged Plaintiffs."

In addition, USAM/RCG submitted desk audits of two Ruby Tuesday restaurants located at a mall known as Mizner Park which is currently owned by General Growth Properties ("GGP"). The estimated claim through 2007 was approximately $900,000. Ruby Tuesday acknowledged receipt of this claim and ultimately submitted payment for $82,500 to USAM/RCG. Per Ruby Tuesday's letter dated May 11, 2010 (Exhibit 9), "GGP, noting CAM issues with RTI (Ruby Tuesday) that they acknowledged through the value of which they disputed, forgave the $165,000 outstanding rent owed on that Mizner Park location in return for a release of all CAM issues with RTI" . As noted in the Complaint, Ruby Tuesday did not pursue its claims as it was required to do in accordance with its contractual responsibilities to Plaintiffs. A summary of our calculation of the loss profits on this claim is noted below.

The economic damages related to the Mizner Park location may increase pending receipt and review by USAM/RCG of the 2008 through 2010 tenant's annual expense reconciliation statements. The Agreement with Ruby Tuesday provided USAM/RCG to receive 25 percent of the gross recovery that Ruby Tuesday received from landlords for no more than five years into the future. Accordingly, we reserve the right to modify our Report should this additional information become available.

### III.  Computation of Loss

- We used Lease Buyout Checklists (Exhibit 6), prepared by Simon Properties, and Exhibits 7 and 8, prepared by Ruby Tuesday, to calculate the total savings to Ruby Tuesday by comparing the net present value of all future rent payments which includes operating expense reimbursements ("Total All-In") versus the actual buyout amounts.

- Based on the rent termination dates established in the Buyout Agreements, either August 31, 2009 or January 31, 2010, we discounted all future All-In rent payments by applying a risk free rate of return (the 20-year Treasury bond yield). This calculation resulted in a Net Present Value All-In Rent Amount of $3,567,365. We reduced the Net Present Value All-In Rent by the total Buyout amounts for the seven (7) properties of $2,015,000 to arrive at a savings of $1,552,365 (Exhibit 5).

3

U.S. ACCU-MEASUREMENTS, LLC AND ROSS CONSULTING GROUP, INC.
V.
RUBY TUESDAY, INC.

## ECONOMIC DAMAGES REPORT

### IV.   CONCLUSION

In our opinion, the economic damages suffered by U.S. Accu-Measurements, LLC and Ross Consulting Group, Inc. was $1,143,683, summarized as follows:

**Simon Properties**

| | |
|---|---|
| Total All-In Rent Payable from Lease Cancellation Dates to Original Lease Expiration Dates  (Adjusted to Net Present Value Based on Wiss Calculations) | $3,567,365 |
| Less: Ruby Tuesday Buyout Amount | (2,015,000) |
| Net Savings – Exhibit 4 | 1,552,365 |
| USAM/RCG Remuneration (50 percent of Gross Recovery) | X  50% |
| Economic Damages | $   776,183 |

**Mizner Park Property**

| | |
|---|---|
| Claim submitted by USAM/RCG (pursuant to Complaint filed 8/26/10) | $ 900,000  * |
| USAM/RCG Remuneration (50 percent of Gross Recovery) | X  50% |
| Estimated Economic damages – Subtotal | $   450,000 |
| Less:  Payment received from Ruby Tuesday – May 11, 2010 | (82,500) |
| Economic Damages | $  367,500 |
| Combined Economic Damages | $1,143,683 |

\*   Claim may be modified should additional information become available, specifically receipt of 2008 through 2010 tenant's annual expense reconciliation statements.

**U.S. ACCU-MEASUREMENTS, LLC AND ROSS CONSULTING GROUP, INC.**
**V.**
**RUBY TUESDAY, INC.**

**ECONOMIC DAMAGES REPORT**

**APPENDICES**

| Appendix | | Page |
|---|---|---|
| A | Statement of Assumptions and Limiting Conditions | 6 |
| B | Documents Relied Upon | 8 |
| C | Expert Analysts' Qualifications | 11 |
| D | Summary of Presentation and Articles | 13 |
| E | Wiss Fees | 14 |
| F | Record of Testimony for Lawrence R. Chodor | 15 |
| G | Signed Engagement Letter | 24 |

Appendix A

## U.S. ACCU-MEASUREMENTS, LLC AND ROSS CONSULTING GROUP, INC.
### V.
### RUBY TUESDAY, INC.

## ECONOMIC DAMAGES REPORT

## STATEMENT OF ASSUMPTIONS AND LIMITING CONDITIONS

1.  There were no limitations of scope imposed on either the analysis process or on this economic damage report, except as may have been identified and discussed therein. Limitations of scope, if any, identified and discussed in the report might influence the user's level of understanding regarding its contents. Accordingly, this Report is not intended for those who are not informed about such matters.

2.  Financial and other related information provided by US Accu-Measurements, LLC and Ross Consulting Group, Inc. ("USAM/RCG") or its representatives, in the course of this engagement, have been accepted without any verification as fully and correctly reflecting the enterprise's business conditions and operating results for the respective periods, except as specifically noted herein. Wiss & Company, LLP has not audited, reviewed, or compiled the financial information provided to us and, accordingly, we express no audit opinion or any other form of assurance on this information.

3.  Public information and industry and statistical information have been obtained from sources we believe to be reliable. However, we make no representation as to the accuracy or completeness of such information and have performed no procedures to corroborate the information.

4.  We do not provide assurance on the achievability of projections by USAM/RCG because events and circumstances frequently do not occur as expected; differences between actual and expected results may be material; and achievement of future results is dependent on actions, plans, and assumptions of management.

5.  This report and the conclusion arrived at herein are for the exclusive use of our client for the sole and specific purposes as noted herein. They may not be used for any other purpose or by any other party for any purpose. Furthermore, this report and conclusion are not intended and should not be construed to be investment advice in any manner whatsoever. The conclusion represents our considered opinion based on information furnished to us by USAM/RCG and other sources.

6.  Neither all nor any part of the contents of this report should be disseminated to the public through advertising media, public relations, news media, sales media, mail, direct transmittal, or any other means of communication without our prior written consent and approval.

**U.S. ACCU-MEASUREMENTS, LLC AND ROSS CONSULTING GROUP, INC.**
**V.**
**RUBY TUESDAY, INC.**

**ECONOMIC DAMAGES REPORT**

7. Future services regarding the subject matter of this report, including, but not limited to testimony or attendance in court, shall not be required of Wiss & Company, LLP unless previous arrangements have been made in writing.

8. No change of any item in this Report shall be made by anyone other than Wiss & Company, LLP, and we shall have no responsibility for any such unauthorized change.

9. Prospective financial information approved by management has been used in our procedures; we have not examined or compiled such prospective financial information and therefore, do not express an audit opinion or any other form of assurance on the prospective financial information or the related assumptions. Events and circumstances frequently do not occur as expected and there will usually be differences between prospective financial information and actual results, and those differences may be material.

10. We have conducted interviews with Charles Ross and Martin Mayer concerning this matter.

11. Except as noted, we have relied on the representations of the owners, management, and other third parties concerning value and useful condition of all equipment, real estate, investments used in the business, and any other assets or liabilities, except as specifically stated to the contrary in this report. We have not attempted to confirm whether or not all assets of the business are free and clear of liens and encumbrances or that the entity has good title to all assets.

7

**U.S. ACCU-MEASUREMENTS, LLC AND ROSS CONSULTING GROUP, INC.**
**V.**
**RUBY TUESDAY, INC.**

### ECONOMIC DAMAGES REPORT

### DOCUMENTS RELIED UPON

#### DEPOSITION EXHIBITS

1. Exhibit 1 (Cole) – Lease Auditing Contract between US Accu-Measurements, Inc and Ruby Tuesday, Inc. dated May 29, 1998.

2. Exhibit 2 (Cole) –email sent to Ross Consulting Group, Inc by Ruby Tuesday Group, Inc dated October 24, 2000 authorizing to proceed with Simon Audit.

3. Exhibit 1 (Duffy) – Master Agreement between Simon Property Group, LP and Ruby Tuesday, Inc.) dated September 3, 2009 regarding dispute relating to waiver of CAM Charges

4. Exhibit 4 (Duffy) - email from Kimberly Kneier (Ruby Tuesday) to Sandy Beall (Ruby Tuesday) dated June 22, 2009 providing details of the "Complete Simon Package".

5. Exhibit 5 (Duffy) - email from Sandy Beall (Ruby Tuesday) to Rick Sokolov (Simon) dated June 22, 2009 with Sandy Beall providing comments on buyout issues, etc. regarding the details of the "Complete Simon Package".

6. Exhibit 6 (Duffy) – email from Kimberly Kneier to Margie Duffy (Ruby Tuesday) dated August 26, 2009.

7. Exhibit 7 (Duffy) – email from Kimberly Kneier to Margie Duffy dated August 26, 2009.

8. Exhibit 8 (Duffy) – email from Sandy Beall to Margie Duffy dated June 22, 2009.

9. Exhibit 9 (Duffy) – list of six (6) Ruby Tuesday locations leased from Simon Properties presenting monthly rent amounts and total rent to term with handwritten notes.

10. Exhibit 11 (Duffy)– "Simon Deals" schedule heading with presents list of seven (7) Ruby Tuesday locations leased from Simon Properties which includes Net Present Value amount through lease expiration; Net Present Value up to 3 year maximum and Q4 Reserve with handwritten notes.

Appendix B

## U.S. ACCU-MEASUREMENTS, LLC AND ROSS CONSULTING GROUP, INC.
## V.
## RUBY TUESDAY, INC.

## ECONOMIC DAMAGES REPORT

**LEASES**

11. Lease Agreement Century III Associates (Landlord) & Morrison Inc. (Tenant) dated September 22, 1992.

12. Rent Commencement Letter between Century III Associates & Morrison Restaurants, Inc. dated April 14, 1993.

13. Short Form Lease between Century III Associates (Landlord) & Morrison Inc. (Tenant) dated September 22, 1992 to lease Room 403 for 17 years at the Century III Shopping Center in West Mifflin, PA.

14. Lease Modification between Haywood Mall Associates (Landlord) & Morrison Restaurants, Inc (Tenant) dated November 13, 1995 related to lease of 365 sf of patio space at no additional rent.

15. Second Modification of Lease between Haywood Mall Associates (Landlord) & Morrison Restaurants, Inc (Tenant) dated January 18, 1996 establishing that premised was delivered on December 5, 1995 & LCD will be earlier of (i) May 4, 1996 or (ii) day Tenant opens for business.

16. Third Modification of Lease between Haywood Mall Associates (Landlord) & Morrison Restaurants, Inc (Tenant) dated June 31, 1996 establishing that premised was remeasured at 4,951 sf and revising Fixed Rent amounts.

17. Fourth Modification of Lease between Haywood Mall Associates (Landlord) & Ruby Tuesday, Inc (Tenant) dated January 3, 1997 effective May 4, 1996 reducing environmental charge from $30,000 to $24,000 per year and deleting electric and non-electric portion of Chilled Water Component.

18. Agreement of Lease between Haywood Mall Associates (Landlord) & Morrison Restaurants, Inc. (Tenant) dated April 22, 1995.

19. First Amendment to Lease between Brunswick Square Mall, LLC (landlord) and Ruby Tuesday, Inc. (Tenant) dated January 26, 2010 extending term from November 1, 2010 to October 31, 2012.

20. First Amendment to Lease between MNH Mall, LLC (Mall of New Hampshire) (Landlord) and Ruby Tuesday, Inc. (Tenant) dated January 26, 2010 extending term from February 1, 2010 to January 31, 2012.

9

## U.S. ACCU-MEASUREMENTS, LLC AND ROSS CONSULTING GROUP, INC.
### V.
### RUBY TUESDAY, INC.

### ECONOMIC DAMAGES REPORT

21. First Amendment to Lease between Mall at Rockingham, LLC (Landlord) and Ruby Tuesday, Inc. (Tenant) dated January 26, 2010 extending term from February 1, 2010 to January 31, 2012.

## OTHER

22. Ross Consulting Group Lease Audit Report dated December 3, 2003.

23. Ross Consulting Group Lease Audit Report dated November, 2004.

24. Letter to Martin Mayer & Charles Ross (U.S. Accu-Measurements, LLC) from Kevin Reeve, VP & Asst Gen Counsel of Ruby Tuesday dated May 11, 2010.

25. Letter to Kevin Reeve (Ruby Tuesday) from Martin Mayer dated May 21, 2010.

26. Letter to Martin Mayer from Kevin Reeve dated June 25, 2010.

27. Complaint U.S. Accu-Measurements, LLC & Ross Consulting Group, Inc v Ruby Tuesday, Inc. dated August 26, 2010.

28. Plaintiffs' Objections and Interrogatory to Defendant's Interrogatories (First Set).

29. Deposition of Marguerite Duffy dated February 17, 2011.

30. Buyout Checklists and Agreements Cancelling Lease dated February 2, 2010 for the following 6 properties:

    - Richmond Heights, OH
    - Gwinnett Place Mall, Duluth, GA
    - Century III Mall, West Mifflin, PA
    - Northpark Mall, Ridgeland, MS
    - Arsenal Mall, Watertown, MA
    - Boynton Beach Mall, Boynton Beach, FL

31. Buyout Checklist and Agreement Cancelling Lease dated July 13, 2010 for Haywood Mall, Greenville, SC.

32. Letter from Kevin Reeve (Ruby Tuesday) to Martin Mayer and Charles Ross regarding settlement with General Growth Properties on the Mizner Park location dated May 11, 2010.

Appendix C

**EXPERT ANALYSTS' QUALIFICATIONS**

**LAWRENCE R. CHODOR, CPA/ABV, CVA, CFF**
**WISS & COMPANY, LLP**
**354 EISENHOWER PARKWAY**
**LIVINGSTON, NEW JERSEY 07039**

## EDUCATION

Graduate of Bryant University, Smithfield, Rhode Island in 1983, with a Bachelor of Science in Accounting

## PROFESSION

Practiced public accounting since 1983

Certified Public Accountant licensed to practice in the States of New Jersey and New York (CPA)

Accredited in Business Valuation (ABV)

Certified Valuation Analyst (CVA)

Certified in Financial Forensics (CFF)

Partner in Wiss & Company, LLP, Certified Public Accountants, 354 Eisenhower Parkway, Livingston, New Jersey 07039, since 1995.

Partner-in-Charge Law Firm Services

## PROFESSIONAL ORGANIZATIONS

Member of:

American Institute of Certified Public Accountants

New Jersey and New York Society of Certified Public Accountants

National Association of Certified Valuation Analysts

JCC of MetroWest Board of Directors

## PROFESSIONAL EXPERIENCE

Lectured before the New Jersey Society of CPA's, the Essex County Bar Association, the New Jersey Institute for Continuing Legal Education and other professionals on accounting, auditing and valuation topics.

Co-authored an article on shareholder agreements that was published in the New Jersey Lawyer.

Participated in initial public offerings and audits of public and privately held companies and non-profit institutions in various industries including manufacturing, distribution, telecommunications, transportation, biotechnology, computer rental and software system design.

Participated in litigation matters including matrimonial, bankruptcy, damage claims, shareholder disputes and valuation of closely-held businesses.

Provided due diligence services for merger and acquisition transactions.

Provided field examination services for financial institutions including collateral reviews for potential and existing loans.

Testified as an expert witness in the State of New Jersey and New York.

11

Appendix C
(continued)

**JOSEPH L. OTTAIANO, CPA**
**WISS & COMPANY, LLP**
**354 EISENHOWER PARKWAY**
**LIVINGSTON, NEW JERSEY 07039**

## EDUCATION

Graduate of Rutgers University, Newark, New Jersey in 1980, with a Bachelor of Arts in Accounting and 1990 with a Master of Business Administration in Finance

## PROFESSION

Practiced public accounting since 1980

Certified Public Accountant licensed to practice in the State of New Jersey

Director of Real Estate Consulting Division in Wiss & Company, LLP, Certified Public Accountants, 354 Eisenhower Parkway, Livingston, New Jersey 07039

## PROFESSIONAL ORGANIZATIONS

Member of:

American Institute of Certified Public Accountants

New Jersey Society of Certified Public Accountants

International Council of Shopping Centers

National Association of Industrial and Office Properties

## PROFESSIONAL EXPERIENCE

Participated in litigation matters including matrimonial and damage claims focusing on real estate related disputes.

Provided due diligence services for real estate acquisition transactions and lender underwriting engagements including debt restructuring projects.

Developed and instructed training modules for financial analysis and forensic accounting courses.

Provided financial analysis and market assessment related services for financial institutions to provide asset summary reviews for potential and existing loans.

12

Appendix D

## U.S. ACCU-MEASUREMENTS, LLC AND ROSS CONSULTING GROUP, INC.
## V.
## RUBY TUESDAY, INC.

### ECONOMIC DAMAGES REPORT

### SUMMARY OF PRESENTATION AND ARTICLES

### LAWRENCE R. CHODOR

**PRESENTATIONS:**

"5 Common Mistakes that Could Cost You Millions", July 19, 2011.

Wells Fargo Private Banking, "Preparing a Business for Sale: A Buyer's Perspective", May 18, 2011.

New Jersey Business Law Symposium (NJ Institute for Continuing Legal Education) "Valuation Tax and Pay-Out Concerns in the Business Divorce", April 9, 2010.

The Commerce and Industry Association of New Jersey, "Mergers and Acquisitions, Strategies for Survival and Success", January 27, 2009.

The Leading Edge, "Valuation of Intangible Assets in Accordance with FAS 141", October 27, 2008

Regent Atlantic – "Preparing a Business for Sale", December, 2007.

The Money Conference – Mergers and Acquisitions, October 21, 2003.

New Jersey Society of Certified Public Accountants Mega Conference, "Developing a Matrimonial Practice", October 25, 2002.

New Jersey Society of Certified Public Accountants Matrimonial Accounting Conference, "Business Valuation Update", May 24, 2001

**ARTICLES:**

New Jersey Law Journal, "Tips to Avoid Courtroom Surprises", August 2011.

New Jersey Lawyer, "The Law Firm Merger" Financial Due Diligence: What to Expect", June 25, 2007.

The Wiss Advisor, "How to Prevent Employee Fraud and Abuse", Fall 2002.

Wiss Website: "Using Net Worth Analysis to Uncover Hidden Assets", 2005.

Co-Authored article for New Jersey Lawyer Magazine, "Shareholders' Agreements: Accounting and Financial Implications", July 1994.

13

Appendix E

## U.S. ACCU-MEASUREMENTS, LLC AND ROSS CONSULTING GROUP, INC.
## V.
## RUBY TUESDAY, INC.

### ECONOMIC DAMAGES REPORT

### WISS FEES

Wiss & Company, LLP's compensation is based on the following hourly rates:

|  | **Hourly Rate** |
|---|---|
| Lawrence R. Chodor | $375 |
| Joseph Ottaiano | $365 |

14

Case 2:10-cv-05011-KM-MCA   Document 15-18   Filed 01/12/12   Page 17 of 60 PageID: 922

Appendix F<br>
(continued)

**U.S. ACCU-MEASUREMENTS, LLC AND ROSS CONSULTING GROUP, INC.**
**V.**
**RUBY TUESDAY, INC.**

## ECONOMIC DAMAGES REPORT

### RECORD OF TESTIMONY FOR LAWRENCE R. CHODOR

| Date | Case | Description |
|---|---|---|
| 02/05/95 | Ronald Couri, Plaintiff<br>v.<br>Maria Couri, Defendant | Matrimonial Litigation |
| | Superior Court of New Jersey<br>Chancery Division, Bergen County<br>Docket No.: FM-05906-93<br>Expert for Defendant | Deposition Testimony |
| | Defendant' Attorney<br>Opposing Attorney | -Geraldine O'Kane, Esq.<br>-Melinda Lowell, Esq. |
| 9/30/97<br>and<br>10/6/97 | G & P Parlamas, Inc., Plaintiff<br>v.<br>J. G. Schmidt Steel, Defendant | Breach of Contract |
| | Superior Court of New Jersey<br>Law Division, Monmouth County<br>Docket No.: MON-L-0620-93<br>Expert for Plaintiff | Trial Testimony |
| | Plaintiff's Attorney<br>Opposing Attorney | -Frederick C. Biehl, III, Esq. |
| 2/08/00 | Bollinger, Plaintiff<br>v.<br>Kirkpatrick, Defendant | Stockholder Dispute |
| | Superior Court of New Jersey<br>Chancery Division, Morris County<br>Docket No.: MRS-C-196-97<br>Expert for Plaintiff | Deposition Testimony |
| | Plaintiff's Attorney<br>Opposing Attorney | -William J. Wolf, Esq.<br>-Paul J. Dillon, Esq. |

15

**Appendix F**
**(continued)**

## U.S. ACCU-MEASUREMENTS, LLC AND ROSS CONSULTING GROUP, INC.
## V.
## RUBY TUESDAY, INC.

### ECONOMIC DAMAGES REPORT

| <u>Date</u> | <u>Case</u> | <u>Description</u> |
|---|---|---|
| 5/04/00 | Wolf, Plaintiff<br>v.<br>Burgermaster, Defendant | Shareholder Dispute |
|  | American Arbitration Association<br>Expert for Plaintiff | Arbitration Testimony |
|  | Plaintiff's Attorney<br>Opposing Attorney | -Harvey Pearlman, Esq.<br>-Jeffrey H. Schechter, Esq. |
| 10/26/00<br>and<br>11/08/00 | Mister Pillow, Inc, et al, Plaintiff<br>v.<br>USF&G Insurance Company, et al,<br>Defendants | Economic Damages |
|  | Superior Court of New Jersey<br>Law Division, Monmouth County<br>Docket No.: MON-L-003469-97<br>Expert for Plaintiff | Deposition Testimony<br>Trial (Jury) Testimony |
|  | Plaintiff's Attorney<br>Opposing Attorney | -Dominick April, Esq.<br>-James B. Burns, Esq. |
| 01/10/01 | C&R Realty and Management Co., Inc.,<br>Plaintiff<br>v.<br>Anthony Pellosie et al. Defendants | Contract Dispute |
|  | Superior Court of New Jersey<br>Law Division, Bergen County<br>Docket No.: BER-L-9475-95<br>Expert for Plaintiff | Deposition Testimony |
|  | Plaintiff's Attorney<br>Opposing Attorney | -Frank E. Ferruggia, Esq.<br>-John S. Favate, Esq. |

16

Appendix F
(continued)

**U.S. ACCU-MEASUREMENTS, LLC AND ROSS CONSULTING GROUP, INC.**
**V.**
**RUBY TUESDAY, INC.**

**ECONOMIC DAMAGES REPORT**

| <u>Date</u> | <u>Case</u> | <u>Description</u> |
|---|---|---|
| 06/27/01 | Lisa S. Epstein, Plaintiff<br>v.<br>Michael Epstein, Defendant | Matrimonial Litigation |
| | Superior Court of New Jersey<br>Chancery Division, Monmouth County<br>Docket No.: FM-13-1932-95A<br>Expert for Defendant | Deposition Testimony |
| | Defendant's Attorney<br>Opposing Attorney | -Peter Harris, Esq.<br>-Bonnie M.S. Reiss, Esq. |
| 07/31/01 | D'Onofrio II, Plaintiff<br>v.<br>Gallagher, Defendant | Contract Dispute |
| | Superior Court of New Jersey<br>Law Division, Ocean County<br>Docket No.: OCN-L-002248-96<br>Expert for Defendant | Trial (Jury) Testimony |
| | Defendant's Attorney<br>Opposing Attorney | -Bruce D. Atkinson, Esq.<br>-Robert Novins, Esq. |
| 11/19/01 | Airborne Freight Corporation<br>v.<br>Think Tek, Inc. | Contract Dispute |
| | United States District Court<br>For the District of New Jersey<br>Civil Action No.: 00-6153 (HAA)<br>Expert for Defendant | Deposition Testimony |
| | Defendant's Attorney<br>Opposing Attorney | -Jeffrey J. Wild, Esq.<br>-Steven J. Fox, Esq. |

Appendix F
(continued)

## U.S. ACCU-MEASUREMENTS, LLC AND ROSS CONSULTING GROUP, INC.
## V.
## RUBY TUESDAY, INC.

### ECONOMIC DAMAGES REPORT

| Date | Case | Description |
|------|------|-------------|
| 11/27/01 | Extended Benefits, Inc., Plaintiff<br>v.<br>Oxford Health Plans, Inc., Defendant | Contract Dispute |
| | United States District Court<br>For the District of New Jersey<br>Civil Action No.: 000876 (JWB)<br>Expert for Plaintiff | Deposition Testimony |
| | Plaintiff's Attorney<br>Opposing Attorney | -Jeffrey J. Wild, Esq.<br>-Wayne Pinkstone, Esq. |
| 5/20/03 | Joanne Simonetti, Plaintiff<br>v.<br>David Simonetti, Defendant<br>Superior Court of New Jersey<br>Chancery Division, Essex County<br>Expert for Plaintiff | Matrimonial Litigation<br><br><br>Trial Testimony |
| | Plaintiff's Attorney<br>Opposing Attorney | -Lucy Agostini, Esq.<br>-Vincent Marino, Esq. |
| 8/21/03 | Joanne M. Fiedler, Plaintiff<br>v.<br>Mack-Cali, Inc., et.al., Defendants<br>Superior Court of New Jersey<br>Law Division, Somerset County<br>Expert for Plaintiff | Economic Damages<br><br><br>Deposition Testimony |
| | Plaintiff's Attorney<br>Opposing Attorney | -Robert Hoyt, Esq. |

18

Appendix F
(continued)

## U.S. ACCU-MEASUREMENTS, LLC AND ROSS CONSULTING GROUP, INC.
### v.
## RUBY TUESDAY, INC.

### ECONOMIC DAMAGES REPORT

| Date | Case | Description |
|------|------|-------------|
| 10/15/03 | Trust 3 Under the Will of<br>Russell G. Ranney, Plaintiff<br>v.<br>Ranney School, Defendant | Contract Dispute |
| | American Arbitration Association<br>Expert for Plaintiff | Arbitration Testimony |
| | Plaintiff's Attorney<br>Opposing Attorney | -David Menzel, Esq.<br>-Lawrence Maher, Esq. |
| 12/16/03 | The Cream-O-Land Dairy Group<br>v.<br>Parmalat USA Corp. and Parmalat S.p.A<br>Superior Court of New Jersey<br>Chancery Division, Middlesex County<br>Expert for Plaintiff | Contract Dispute<br><br>Deposition Testimony |
| | Plaintiff's Attorney<br>Opposing Attorney | -Richard Galex, Esq.<br>-Barry Kozyra, Esq. |
| 8/3/04 | Cambria Automotive Companies, Inc.,<br>Plaintiff<br>v.<br>Borough of Elmwood Park, et.al., Defendants<br>Superior Court of New Jersey<br>Law Division, Bergen County<br>Expert for Plaintiff | Economic damages<br><br>Deposition Testimony |
| | Plaintiff's Attorney<br>Opposing Attorney | -Katherine Wigness, Esq.<br>-Leonard Rosa, Esq. |

19

Appendix F
(continued)

## U.S. ACCU-MEASUREMENTS, LLC AND ROSS CONSULTING GROUP, INC.
## V.
## RUBY TUESDAY, INC.

### ECONOMIC DAMAGES REPORT

| Date | Case | Description |
|------|------|-------------|
| 08/31/05 | Larry Snider, Plaintiff<br>v.<br>Michael Berk, et als., Defendants<br>Superior Court of New Jersey<br>Law Division – Monmouth County<br>Docket No. MON-L-200-01<br>Expert for Defendants | Stockholder Dispute<br><br><br><br>Deposition Testimony |
| | Defendant's Attorney<br>Opposing Attorney | -Sean R. Regan, Esq.<br>-Jeffrey A. Donner, Esq. |
| 10/05/05 | Leon E. Jamie,<br>National Memorial Chapel, Inc., Claimants<br>and<br>Edward D. Jamie, Jr., Respondent<br>American Arbitration Association – NY State<br>Expert for Claimants | Stockholder Dispute<br><br><br><br>Arbitration Testimony |
| | Claimant's Attorney<br>Opposing Attorney | -Martin Lee, Esq.<br>-Neal Brickman, Esq. |
| 01/16/08 | Prisma S.A. and Emporiki Leasing S.A.,<br>Claimants<br>vs.<br>Tamglass Tempering Systems, Inc.,<br>Respondent<br>American Arbitration Association -<br>Pennsylvania State<br>Expert for Claimants | Economic Damages<br><br><br><br><br>Deposition Testimony |
| | Claimant's Attorney.<br>Opposing Attorney | -Michael J. Kopcsak, Esq.<br>-Mark A. Eck, Esq. |

20

Appendix F
(continued)

## U.S. ACCU-MEASUREMENTS, LLC AND ROSS CONSULTING GROUP, INC.
## v.
## RUBY TUESDAY, INC.

### ECONOMIC DAMAGES REPORT

| Date | Case | Description |
|------|------|-------------|
| 04/28/08 | Verizon New Jersey, Inc. Plaintiff<br>v.<br>One Washington Park Urban Renewal<br>Association, et al. | Economic Damages<br><br>Trial Testimony<br><br>Defendants |
| | Superior Court of New Jersey<br>Law Division: Morris County<br>Docket No. MRS-L-120-05<br>Expert for Plaintiff | |
| | Plaintiff's Attorney<br>Opposing Attorney | -David Menzel, Esq.<br>-Ronald Nagel, Esq. |
| 09/17/08 | Peter J. Milazzo, Plaintiff<br>v.<br>SMS Industries, Inc., Defendant<br>Supreme Court of New York<br>Index No. 603804/07<br>Expert for Plaintiff | Stockholder Dispute<br><br>Trial Testimony |
| | Plaintiff's Attorney<br>Opposing Attorney | -Peter M. Levine, Esq.<br>-Daniel M. McGillycuddy, Esq. |
| 12/13/08 | Prisma S.A. and Emporiki Leasing S.A.,<br>Claimants<br>v.<br>Tamglass Tempering Systems, Inc.,<br>Respondent<br>American Arbitration Association -<br>Pennsylvania State<br>Expert for Claimants | Economic Damages<br><br><br><br>Arbitration Testimony |
| | Claimants Attorney<br>Opposing Attorney | -Michael J. Kopcsak, Esq.<br>-Mark A. Eck, Esq. |

21

Appendix F
(continued)

## U.S. ACCU-MEASUREMENTS, LLC AND ROSS CONSULTING GROUP, INC.
### V.
## RUBY TUESDAY, INC.

### ECONOMIC DAMAGES REPORT

| Date | Case | Description |
|---|---|---|
| 02/10/09 | Thomas R. Curtin, Plaintiff<br>v.<br>Kathleen P. Curtin, Defendant | Matrimonial Litigation |
| | Superior Court of New Jersey<br>Chancery Division: Family Part, Morris County<br>Docket No.: FM-14-1048-07-B<br>Expert for Plaintiff | Deposition Testimony |
| | Plaintiff's Attorney<br>Opposing Attorney | -Frederick J. Sikora, Esq.<br>-Kenneth R. Rush, Esq. |
| 05/04/09 | Thomas R. Curtin, Plaintiff<br>v.<br>Kathleen P. Curtin, Defendant | Matrimonial Litigation |
| | Superior Court of New Jersey<br>Chancery Division: Family Part, Morris County<br>Docket No.: FM-14-1048-07-B<br>Expert for Plaintiff | Trial Testimony |
| | Plaintiff's Attorney<br>Opposing Attorney | -Edward O'Donnell, Esq.<br>-Kenneth R. Rush, Esq. |
| 03/24 and<br>03/25/10 | Airframe Systems, Inc., Plaintiff<br>v.<br>Raytheon Company and<br>L-3 Communications Corporation,<br>Defendants<br>Expert for Plaintiff | Economic Damages -<br>Copyright Infringement<br><br>Deposition Testimony |
| | Plaintiff's Attorney<br>Opposing Attorney | -Bruce Afran, Esq.<br>-Alan M. Gelb, Esq. |

Appendix F
(continued)

## U.S. ACCU-MEASUREMENTS, LLC AND ROSS CONSULTING GROUP, INC.
### v.
## RUBY TUESDAY, INC.

### ECONOMIC DAMAGES REPORT

| Date | Case | Description |
|---|---|---|
| 03/11/11 | Dheeraj K. Akula, Plaintiff<br>v.<br>International Software Consulting, Inc.<br>Emerging Software Consulting, Inc.<br>Mascon Global Consulting, Inc.,<br>Nandu Thondavadi and Krishnamurthy<br>Chandra, Defendants | Breach of Contract |
| | Superior Court of New Jersey<br>Chancery Division<br>Middlesex County<br>Docket No. C-161-07<br>Expert for Defendants | |
| | Opposing Attorney<br>Defendants Attorney | -Leo J. Hurley, Jr., Esq.<br>-Gary E. Roth, Esq. |
| 03/21/11 | Rita Megaro, Plaintiff<br>v.<br>Anthony Megaro, Defendant<br>Superior Court of New Jersey<br>Chancery Division: Family Part<br>Hunterdon County<br>Docket No. FM-10-418-085<br>Expert for Plaintiff<br>Plaintiff's Attorney<br>Opposing Attorney | Matrimonial<br><br><br><br><br><br><br>-Angelo Sarno, Esq.<br>-Neil Braun, Esq. |

23

Appendix G

## U.S. ACCU-MEASUREMENTS, LLC AND ROSS CONSULTING GROUP, INC.
### V.
### RUBY TUESDAY, INC.

### ECONOMIC DAMAGES REPORT



July 14, 2011

Chris Franzblau, Esq.
Franzblau Dratch
354 Eisenhower Parkway
Livingston, New Jersey 07039

     RE:    *U.S. Accu-Measurements, LLC., a Florida Limited Liability Company,*
              *Successor to U.S. Accu-Measurements, Inc., a New Jersey Corporation and*
              *Ross Consulting Group, Inc., a New Jersey Corporation, Plaintiffs*
              *vs.*
              *Ruby Tuesday, Inc., Defendant*
              *United States District Court*
              *District of New Jersey*
              *Case No.: 2:10-CO-05011 (PGS)*

Dear Mr. Franzblau:

This letter is to confirm our understanding of the terms and objectives of our engagement and the nature and limitations of the services we will provide.

### OUR SERVICES

You have retained Wiss & Company, LLP to provide services in connection with the above litigation currently pending before the United States District Court, District of New Jersey.

We will assist you in your representation of U.S. Accu-Measurements, LLC, ("U.S. Accu-measurements" and Ross Consulting Group, Inc. "Ross", collectively the "Company"). We anticipate our services will include a review of the claims that have been asserted by the Company related to certain services provided to Defendant by the Company as well as other financial matters you bring to our attention.

We will be able to consult with you, and should you deem it appropriate, we will be prepared to provide expert witness testimony at deposition or trial. All information and documents made available to us during this engagement will be held in confidence.

At your request, we will prepare a report of our findings. The report's distribution will be limited to you, and its use restricted to this matter. Any other use or distribution of the report is strictly prohibited without the expressed, written consent of Wiss & Company, LLP. We assume no responsibility to update our report for events that occur after its date of issuance.

WISS & COMPANY, LLP • 354 Eisenhower Parkway, Livingston, NJ 07039 • Phone: 973.994.9400 • Fax: 973.992.6760
NEW YORK • LIVINGSTON • ISELIN
www.wiss.com

24

**Appendix G**
**(continued)**

## U.S. ACCU-MEASUREMENTS, LLC AND ROSS CONSULTING GROUP, INC.
### V.
### RUBY TUESDAY, INC.

### ECONOMIC DAMAGES REPORT

Chris Franzblau, Esq.                                        July 14, 2011
Livingston, New Jersey

2

We will accept as reliable, accurate and complete the financial or other information provided to us. We will not audit, review or compile such financial information, in regard to the application of Generally Accepted Accounting Principles (GAAP) and Generally Accepted Auditing Standards (GAAS). Accordingly, we will not express an opinion or any other form of assurance on them. We will, however, review and analyze the available data and perform certain procedures and analyses to satisfy ourselves as to its reasonableness thus enabling us to form our conclusions. All information, documents and findings relative to this engagement are considered confidential.

Our engagement cannot be relied upon to disclose errors, fraud, or illegal acts that may exist. However, we will inform you of any material errors that come to our attention and any fraud or illegal acts that come to our attention, unless they are clearly inconsequential.

Our fees for these services will be billed at our standard hourly rates in effect at the time services are rendered, which currently range from $135 for staff assistants to $375 for partners, plus out-of-pocket expenses. We require a retainer of $7,500. Should the retainer exceed the total fees and costs incurred, we will refund the excess. Invoices for services will be rendered to you periodically and are due upon presentation. In the absence of our receipt of a written objection to any invoice within 30 days of the date it is rendered, you will be deemed to have accepted and acknowledged as correct the services rendered and the value thereof.

We understand our fees are the obligation of the U.S. Accu-Measurements and Ross.

Our fees are not contingent on the results obtained as we do not warrant or predict results or the final outcome of this matter.

You or the court will advise us with sufficient notice, of the services to be performed by us and the requirement for appearance in court. All outstanding fees must be paid in full before testimony is provided. In the event that we are required to appear at a proceeding related to the matter, you will be billed for travel time to and from the proceeding, waiting time, if any, and testifying time. Should information become known that would make our continued involvement in this engagement inappropriate, or should the attorneys or parties involved in this litigation change, we reserve the right to withdraw from this engagement.

We both agree that any dispute over fees charged by us will be submitted for resolution by arbitration in accordance with the Rules of Professional Accounting and Related Services Disputes of the American Arbitration Association or with any other arbitration association. Cost of any mediation proceeding should be shared equally by all parties. In agreeing to arbitration, we both acknowledge that in the event of a dispute over fees charged by us, each of us is giving up the right to have the dispute decided in a court of law before a judge or jury and instead we are accepting the use of arbitration for resolution.

Appendix G<br>(continued)

## U.S. ACCU-MEASUREMENTS, LLC AND ROSS CONSULTING GROUP, INC.
V.

## RUBY TUESDAY, INC.

### ECONOMIC DAMAGES REPORT

Chris Franzblau, Esq.                                        July 14, 2011
Livingston, New Jersey

3

Please indicate your agreement with the contents of this letter by signing the enclosed copy where indicated and returning it to us with the retainer requested.

Sincerely,

<i>Lawrence R. Chodor</i>
Lawrence R. Chodor

The services described in this letter are in accordance with my requirements and the terms are acceptable to me:

Accepted:

By:_____

    Chris Franzblau, Esq.

Date: _____

Acknowledgement of Financial Obligations

By: _____

    Martin Mayer for U.S. Accu-Measurements, LLC.

Date: _____

By: _Charles H. Ross_____
    H.
    Charles Ross for Ross Consulting Group, Inc.

Date: _July 17, 2011_____

U.S. ACCU-MEASUREMENTS, LLC AND ROSS CONSULTING GROUP, INC.
V.
RUBY TUESDAY, INC.

## ECONOMIC DAMAGES REPORT

## EXHIBITS

**Exhibit**

1    Lease Auditing Contract between US Accu-Measurements, Inc. and Ruby Tuesday, Inc. dated May 29, 1998.

2    Email sent to Ross Consulting Group, Inc. by Ruby Tuesday Group, Inc. dated October 24, 2000 authorizing to proceed with Simon Audit.

3    Master Agreement between Simon Property Group, LP and Ruby Tuesday, Inc.) dated September 3, 2009 regarding dispute relating to waiver of CAM Charges.

4    Wiss Calculation of Achieved Savings based on Net Present Value.

5    Lease Buyout Checklists for seven (7) properties.

6    Exhibit 9 (Duffy) – List of six (6) Ruby Tuesday locations leased from Simon Properties presenting monthly rent amounts and total rent to term with handwritten notes.

7    Exhibit 11 (Duffy)– "Simon Deals" schedule heading with presents list of seven (7) Ruby Tuesday locations leased from Simon Properties which includes Net Present Value amount through lease expiration; Net Present Value up to 3 year maximum and Q4 Reserve with handwritten notes.

8    Letter from Kevin Reeve (Ruby Tuesday) to Martin Mayer and Charles Ross regarding settlement with General Growth Properties on the Mizner Park location dated May 11, 2010.



U.S. Accu-Measurements, Inc.

AMERICA'S RENTAL OVERCHARGE RECOVERY SPECIALISTS

Exhibit 1



EXHIBIT
1 Cole

## Facsimile Transmission

++++++++++++++++++++++++++++++++++

To: M Walter G. Cole, Jr. Esq.
Company: Ruby Tuesday Executive Offices
Destination Fax#: (423 ) 379-6827
Date: June / 12 /9 8
Pages: 5 incl cover sheet

++++++++++++++++++++++++++++++++++

Additional Message:

Re: Lease Auditing Contract

Dear Walter:

I fax herewith a fully executed agreement and will be mailing
an ink original.

Please disregard my June 9th letter. John Valentine of our office
pointed out that the language of the revision is clear: the 5
year limitation is to apply only to the in futuro portion of any
recovery, and that rate is 25% as to any in futuro years which might
constitute a part of the first five years of a given lease. Otherwise,
paragraph a) governs the past portion of the lease transaction.

We also agreed that, in the event you do not enjoy at least 5 in
futuro years of occupancy, the fee is cancelled to the extent you
did not effect the agreed upon savings attributable to in futuro
occupancy, in the event you terminate any such lease during our
in futuro entitlement period. Past overcharge payments enjoyed
in futuro are not covered by this understanding.
We will be contacting Dave Hibbard shortly to discuss document
retrieval.

Cordially and with Thanks,

Martin C. Mayer, President

mcm/dms

*If you do not receive a clear and full transmission, please phone (973) 994-9052.*

63 Dorsa Avenue • Livingston, New Jersey 07039 • Telephone (973) 994-9052 • (800) 554-9020 • Fax (973) 994-2212

Exhibit 1
(continued)

## CONTRACT FOR COMMERCIAL LEASE ANALYTICAL AND SPACE COST OCCUPANCY VERIFICATION SERVICES

The contract vendor of services herein is U.S. ACCU-MEASUREMENTS, INC., with general business offices at 66 W. Mount Pleasant Avenue, Livingston, N.J. 83 Dorsa Avenue 07039 (Tel: 1-800-554-9020; Fax 973-994-2212 ).

The contract vendee, recipient of services to be performed hereunder, is RUBY TUESDAY, INC., with general offices at 4721 Morrison Drive, Mobile, Alabama 36625-0001. ( Tel: 334-344-3000; Fax 334-343-4365). (Effective June 1, 1998, address for Ruby Tuesday, Inc. will be: 150 West Church Avenue , Maryville, Tennessee 37801
Tel.888 -553-4352).
The subject matter of this service agreement is existing leases of vendee with private landlords. A list of the aforesaid leases are appended to this agreement as Exhibit "A", listed by street address. Vendee may add to or subtract from such list at its discretion , providing, in the case of subtraction from the list, the deleted assignment has not commenced at the time of such deletion.

The term of this agreement is one year from the making thereof, with automatic one year extensions unless otherwise cancelled. Either party may cancel this agreement at any time upon thirty days' written notice sent Certified Mail, Return Receipt Requested, sent to the recipient at the office addresses appearing above or to any subsequent address furnished in writing each to the other. In the event of such cancellation, vendor agrees to complete all work in progress; vendee agrees in such event to honor all of its undertakings with respect to the completion of any work still in progress.

The retaining of U.S. ACCU-MEASUREMENTS, INC, by RUBY TUESDAY, INC. specifically means that vendor's remuneration is contingent and is based upon a realization in fact by vendee of refunds made by landlords or their assigns , predicated upon information documented by vendor that overcharges in fact occurred. Remuneration is to be made to vendor by vendee, only when, as and if refunds and cost reductions are realized, as received by vendee, and whether in cash, kind, or by way of rental credit.

Vendor's fee schedule is agreed upon as follows:

(a) Fifty Percent (50%) of the gross recovery of monies from landlords, as respects overpayments made from the date of inception of any subject lease through the present (current year under analysis), nomatter when in time recovered and realized by vendee in fact.

(b) Twenty-five Percent (25%) of the gross recovery of monies from landlords, as repects monies realized from adjustments and/or corrections of overcharges which would have taken place over the future life of any subject lease but for the correction and adjustment of same by vendor for vendee's account. The vendor's fee as provided in this paragraph (b) shall be limited to a period of five (5) years, such period commencing on the date the recovery period commences as provided for in (a).
Specifically, vendor agrees to perform the following menu of analytical services , on a contingent remuneration basis, without cost or liability to vendee except as set forth above in the schedule of vendor's remuneration.

1. A cash cost interpretive review of the lease ( a "four corners" integrated review of language and definitions), geared toward pinpointing overcharges IN FACT as they relate to payment of base rental and CAM upcharges. Also to be established is the existence, if any, of the definitions upon which exclusively demised space to tenant has been calculated
For example, if the recovery period commences on a date two (2) years earlier in the lease term, then the vendor's fee under this paragraph (b) would extend for a period of three (3) years.

Exhibit 1
(continued)

and the definitional base for determining how the ancillary passthrough proration has been calculated.

2. A verification review, from an engineering perspective, geared to verify if, in fact, vendee in each instance occupies that which is described as exclusively demised to vendee; and, where multiple occupancy of a building exists, whether the calculation of "aggregate rentable", upon which the denominator of the CAM proration factor is calculated, is accurate. With reference to the latter, vendee agrees to supply scaled drawings of the entire building of which vendee's premises constitute a portion, at vendee's option, as a prerequisite for this particular item of service.

3. Presentation by vendor , to vendee, in the form of a written report,  with diagrams where needed, of all overcharges attributable to "phantom" square footage in the demised premises and in the aggregated rentable premises of the entire building of which vendee's premises are a part, subject to the furnishing of drawings as per the prior paragraph.

4. Presentation by vendor, to vendee, of a quantification of overcharges attributable to line items improperly passed through, miscalculated or mis-allocated.

5. Presentation by vendor , to vendee, of a written bill of particulars quantifying all matters discovered to be  overcharges, but in a "gray area" of possible entitlement, which should be clarified or corrected in future negotiations of lease documentation.

6. Vendor, thereafter, with permission, advice and consent of vendee, shall be franchised by vendee to utilize all diplomatic and courteous means, all at the discretion of RUBY TUESDAY, INC. and subject to vendee's rules and protocol, to effect an adjustment of any overcharges from vendee's landlord (s), for the account of vendee.

7. In the event, after reasonable and diplomatic recovery efforts have been exhausted, vendor and vendee MUTUALLY agree that a given claim should be prosecuted in the courts or in arbitration, the cost of hiring situs jurisdiction licensed counsel shall be borne by vendee, but the cost thereof, predicated upon reasonable and customary fees, shall be charged off against the portion of any such recovery belonging to vendor, up to the full amount of any such contingent fee.

8. For the purposes of calculating remuneration and assessing legal costs, if any, each lease set forth on the appended schedule shall be treated as a separate assignment. Vendor will be doing most of its technical work within the State of New Jersey. In consideration of same, the parties agree that in the event of any disagreement relating to this contract, the law of New Jersey will apply.

9. Both parties hereto acknowledge that good faith, pragmatic cooperation, and a great degree of co-sourcing and pooling of  available information are required to achieve an effective end result  for vendee. Both parties, hereto, pledge such good faith cooperation and agree to hold confidential any trade secrets or privileged information either learns of the other during the course of this assignment.  This paragraph will survive any termination of this agreement for an additional period of two years.

Signed and Sealed this _29th_ day of ~~November, 1997~~ May, 1998.

RUBY TUESDAY, INC.                    U.S. ACCU-MEASUREMENTS, INC.

_____               _____ Pres.
Chief Executive Officer

RUBY TUESDAY MALL LOCATIONS

*New Jersey ~ CAM*

Exhibit 1
(continued)

| HOUSE CODE | UNIT | CONCEPT | LOCATION | CITY | STATE | RIGHT TO AUDIT? | TIMES PER YEAR/ ADV. NOTICE | LEASE SECTION |
|---|---|---|---|---|---|---|---|---|
| 2954 | 306 | RT | Deptford Mall, #1A1 | Deptford | NJ | Yes | 30 day written notice. | 23.32 |
| 2904 | 277 | RT | Brunswick Square, #400 | East Brunswick | NJ | No | Have the right to contest within 60 days of receipt of certification. | Par. 10(h) |
| 3638 | 402 | RT | Monmouth Mall | Eatontown | NJ | Yes | 30 day written notice - not more than once per calendar year - within 12 months after receiving year end accounting. | 6.4 |
| 3640 | 405 | MZ | Monmouth Mall | Eatontown | NJ | Yes | 30 day written notice - not more than once per calendar year - within 12 months after receiving year end accounting. | 6.4 |
| 2932 | 295 | RT | Freehold Raceway Mall, Suite 100 | Freehold | NJ | Yes | 30 day prior written notice - not more than once per calendar year. | 31b |
| 3660 | 420 | MZ | Quaker Bridge Mall | Lawrenceville | NJ | No | Upon written request, Landlord must submit reasonable back-up documentation. | Rider VII |
| 3961 | 359 | RT | Ledgewood Mall | Ledgewood | NJ | Yes | 10 days written notice - not more than twice per lease year. | 14 |
| 2929 | 266 | RT | Hamilton Mall, #139 | Mays Landing | NJ | No | Upon written request, Landlord must submit reasonable back-up documentation. | Rider 58 |
| 3612 | 403 | RT | The Mall at Short Hills | Milburn | NJ | No | Upon written request - not more than once per lease year - Landlord will furnish internal audit report. | Adden. 8.03(a) |
| 3609 | 396 | RT | N. Plainfield | N. Plainfield | NJ | Yes | 10 days notice - not more than once per year. | 11.04(d) |
| 2697 | 240 | RT | Garden State Plaza Mall | Paramus | NJ | Yes | 10 days notice - within 60 days of end of such Lease Year. | 8.03(d) |
| 3692 | 499 | RT | The Plaza at Woodbridge | Woodbridge | NJ | Yes | Upon written notice - not more than once per year. | Rider 20 |

EXHIBIT A – Page 1 of 3

RUBY TUESDAY MALL LOCATIONS

Exhibit 1
(continued)

| HOUSE CODE | UNIT | CONCEPT | LOCATION | CITY | STATE | RIGHT TO AUDIT? | TIMES PER YEAR/ ADV. NOTICE | LEASE SECTION |
|---|---|---|---|---|---|---|---|---|
| 2982 | 401 | RT | Crossgates Mall | Albany | NY | Yes | For 3 year period after Lease Year in question. | 7.05 |
| 3926 | 302 | MZ | Colonie Center | Albany | NY | No | Upon written request, Landlord must submit reasonable back-up documentation. | Rider 65 |
| 2708 | 124 | RT | Walden Galleria, Space B217 | Buffalo | NY | Yes | For 3 year period after Lease Year in question. | 7.05 |
| 3973 | 315 | RT | Great Northern Mall | Clay (Syracuse) | NY | Yes | 30 days written notice - not more than once per calendar year. | 31(b) |
| 3085 | 385 | RT | Broadway Mall | Hicksville | NY | Yes | 15 days notice. | Rider to 34 |
| 3819 | 323 | RT | Jay Scutti Blvd. | Henrietta | NY | Yes | At any reasonable time. | 46 |
| 3916 | 275 | RT | Arnot Mall | Horseheads | NY | Yes | At any reasonable time. | Rider 10 |
| 3766 | 505 | RT | Route 110 @ Daniel Street | Farmingdale | NY | Yes | 15 days prior notice - not more than once per calendar year. | 6.02(B) |
| 2775 | 151 | RT | Oakdale Mall | Johnson City | NY | Yes | 10 days notice. | 7.5 |
| 2944 | 293 | RT | Smith Haven Mall, Space C-26 | Lake Grove | NY | No | | |
| 3858 | 434 | RT | Sunrise Mall | Massapequa | NY | Yes | At any reasonable time after reasonable notice once per year. | Rider 8 |
| 2967 | 222 | RT | Galleria at Crystal Run | Middletown | NY | Yes | For 3 year period after Lease Year in question. | 7.05 |
| 3826 | 330 | MZ | Galleria at Crystal Run | Middletown | NY | Yes | For 3 year period after Lease Year in question. | 7.05 |
| 3667 | 351 | RT | Nanuet Mall, Space 1109 | Nanuet | NY | Yes | 10 days prior notice - not more than once per calendar year. | Rider to 32 |
| 2838 | 165 | RT | Saogertown Square Mall | New Hartford | NY | Yes | For 3 year period after Lease Year in question. | 7.05 |
| 3963 | 314 | RT | Perinton Hills Shopping Center | Perinton | NY | Yes | 10 days prior written notice - within 3 years of statement of charges. | Rider 10 |
| 3686 | 353 | RT | Irondequoit Mall | Rochester | NY | Yes | 30 days prior written notice - not more than once per calendar year. | 31(b) |
| 3650 | 390 | RT | Selden Plaza | Selden | NY | Yes | Reasonable notice. | 3.09 |
| 2882 | 173 | RT | Carousel Center | Syracuse | NY | Yes | For 3 year period after Lease Year in question. | 7.05 |
| 3845 | 335 | MZ | Carousel Center, Space B-109 | Syracuse | NY | Yes | For 3 year period after Lease Year in question. | 7.05 |
| 3932 | 326 | RT | Price Club Plaza | Westbury | NY | Yes | 30 days prior written notice - not more than once annually. | 10.03 |
| 3983 | 301 | RT | Wilton Mall at Saratoga | Wilton (Saratoga Spr). | NY | Yes | 30 days prior written notice - not more than once per calendar year. | 31(b) |

EXHIBIT A – Page 2 of 3

RUBY TUESDAY MALL LOCATIONS

*Pennsylvania - CAM*

Exhibit 1
LEASE (continued)

| HOUSE CODE | UNIT | CONCEPT | LOCATION | CITY | STATE | RIGHT TO AUDIT? | TIMES PER YEAR/ ADV. NOTICE | LEASE SECTION |
|---|---|---|---|---|---|---|---|---|
| 3274 | 482 | RT | Sierra North Plaza | Altoona | PA | Yes | 5 days prior notice. | 17L |
| 2861 | 265 | RT | Erie | Erie | PA | No | CAM est - escalates on CPI. | |
| 3786 | 476 | RT | Oaklands Park | Exton | PA | Yes | At any reasonable time. | 17L |
| 2959 | 280 | RT | Westmoreland Mall | Greensburg | PA | Yes | 20 days written notice - not more than once per Lease year. | Rider 18 |
| 3670 | 354 | RT | Hawthorne Town Center | Lancaster | PA | Yes | At any reasonable time. | 17M |
| 2698 | 286 | RT | Granite Run Mall, #104 | Media | PA | Yes | 15 days notice. | Rider to 34 |
| 3847 | 411 | MZ | Granite Run Mall | Media | PA | Yes | 15 days notice. | Rider to 34 |
| 2763 | 244 | MZ | Pittsburgh | Monroeville | PA | Yes | 10 days notice - not more than once every 2 years. | 20 |
| 2831 | 248 | RT | North Wales | Montgomeryville | PA | No | Upon written request, may get back-up documentation for specific line item of CAM costs | Rider 60 |
| 2892 | 158 | RT | Franklin Mills Mall, #661-R | Philadelphia | PA | Yes | Upon written notice - not more than once per year. | Rider to 5.02(a) |
| 3984 | 327 | RT | Galleria Southpointe | Pittsburgh | PA | Yes | At any reasonable time upon reasonable notice not more than once per year. | Rider 10 |
| 2764 | 252 | RT | Springfield Mall | Springfield | PA | No | | |
| 2888 | 264 | RT | Century III Mall, #403 | West Mifflin | PA | No | Tenant may contest within 60 days of receipt of statement. | XI - 3 |
| 3960 | 305 | RT | Lehigh Valley Mall, #101 | Whitehall | PA | No | Upon written request, may get back-up documentation for specific line item of CAM costs | Rider 57 |
| 3914 | 272 | RT | Triangle Plaza 680-881G | Wilkes Barre | PA | Yes | At any reasonable time not more than once per Lease year. | 15 |
| 2848 | 274 | RT | Berkshire Mall | Wyomissing | PA | No | Upon written request, may get back-up documentation for specific line item of CAM costs | Rider 58 |
| 2886 | 284 | RT | York Galleria, Space #216 | York | PA | Yes | Tenant has right. | Rider 55 |

EXHIBIT A - Page 3 of 3

FILE Copy

USAM Exhibit 2
FM
TA
LB    BANK

To:      Ross Consulting Group, Inc.

From:    Ruby Tuesday Group, Inc.

EXHIBIT
2 Cole

Date:    October 24, 2000

Subject:   Authorization to proceed with Simon Audit

Ruby Tuesday Group, Inc. (hereinafter Client) hereby authorizes Ross Consulting Group, Inc. (hereinafter RCG) to perform the following type services on Client's stores:

- Review leases with the Simon Property Group (hereinafter Landlord).

- Perform research, including the scheduling of field audits, as needed, to determine the existence of improper charges.

*Common area utilities only* — Coordinate a utility auditor (Remco or the like) to inspect its stores, where necessary, and audit its store and mall utility expenses billed by the Landlord.

- Prepare for Client's review and approval a written report of all allegations, including estimated overcharges.

*RT reserves right ) Negotiate* — Schedule a meeting(s) with a representative(s) of the Landlord to discuss all allegations authorized by Client in order to negotiate a fair resolution.

- Keep Client advised as to RCG's progress throughout the audit.

Therefore, in keeping with the above, RCG will advise Landlord of Client's desire to audit and/or discuss the books and records of specific Client's stores, including landlord billed utilities, and to act as its agent during the audits/discussions. Client acknowledges that a joint review will be coordinated by RCG involving a group of retailers. RCG is authorized to consult and utilize outside legal counsel (hereinafter Counsel) as it deems necessary to assist Client in recoveries of past alleged overcharges by Landlord, its related companies, permitted assigns, and successors, but no legal proceeding may be commenced without prior written authorization from Client. RCG represents that Counsel has agreed to make the collection of its fees contingent upon a recovery. Client understands that no settlement shall be agreed upon without Client's written approval.

*Only Common area*

Client also authorizes a utility auditor (Remco or equal) to inspect its stores and audit its store and mall utility expenses billed by Landlord. A separate authorization letter is attached or has been previously executed and returned.

*IS Accu'ts legal* — Client agrees that any recoveries from this audit will be governed by the Letter of Agreement between RCG and Client, and any disbursements will be made in accordance with that Agreement. Any future savings in lieu of past recoveries including, but not limited to, extended payments and/or credit schedules will be governed by the paragraph describing "past recoveries" of the Letter of Agreement referred to above. The parties agree to deduct the total legal cost, if any, that are not recovered from Landlord from any recovery prior to calculating the RCG share per the aforementioned Agreement.

*B*     10/23/00      *(see Contract #B)*  *Contract*   Page 1 of 2            © 2000 Ross Consulting Group, Inc.

01/05/01   17:05      RUSS CONSULTING GROUP INC → 18653756028                Exhibit 2....
                                                                            (continued)

Client agrees that Counsel may receive the proceeds of the settlement directly from the landlord and, to the extent the settlement is the payment of money, disburse the monies due Client, each consultant, and other authorized parties. It is agreed that all parties will in advance agree in writing to the allocable shares due the respective participants.

Client further agrees to immediately advise RCG if Landlord attempts to negotiate a settlement(s) directly with Client. If Client elects to negotiate directly with Landlord, Client agrees to work closely with RCG during said negotiations and to fully disclose the terms of the proposed and final settlement(s) to RCG.

For: RUBY TUESDAY GROUP, INC.

_David M Hibbard_
Signature

_Paul Hibbard_
Print Name

_Director of Real Estate_  _1/6/01_
Title                        Date

Exhibit 3



**SIMON**® | PROPERTY
GROUP, INC.

Jamie L. Shoemaker
Direct Dial:  (317) 263-2380
Facsimile:  (317) 685-7355
E-Mail:  jshoemak@simon.com

RECEIVED FEB 1 2 2010

February 4, 2010

*VIA FEDEX*

Sue B. Coley
Ruby Tuesday
150 W. Church Ave.
Maryville, TN  37801

RE:     *Master Agreement*
        *Ruby Tuesday*

Dear Ms. Coley:

Please find enclosed one (1) fully-executed copy of a Master Agreement for the above-referenced location.

Thank you for your assistance in this matter.

Sincerely,

SIMON PROPERTY GROUP

Jamie L. Shoemaker
Senior Leasing Paralegal

Enclosures

Exhibit 3
(continued)



September 3, 2009

Kimberly Kaiser
Development Director
Ruby Tuesday, Inc.
150 West Church Avenue
Maryville, TN 37801

RE:    Global Resolution of Certain Issues

### MASTER AGREEMENT

Dear Ms. Kaiser:

In consideration of the mutual covenants contained herein and in the respective leases amended and modified hereby and other good and valuable consideration, the receipt and sufficiency of whereof is hereby acknowledged, the parties, SIMON PROPERTY GROUP, L.P. ("Simon") on behalf of itself, its parents, subsidiaries and affiliates, as "Landlord" of the properties described in Exhibits "A" and "B" attached hereto, and RUBY TUESDAY, INC. on behalf of itself, its subsidiaries and affiliates, as "Tenant" of the properties described in Exhibits "A" and "B" attached hereto, have agreed, as follows:

1.   The terms of this Master Agreement shall be applicable to the lease for each of the properties listed on Exhibits "A" and "B" attached hereto (hereinafter individually and collectively referred to as "Lease(s)"). Each of the properties listed on Exhibits "A" and "B" shall be referred to as a "Center(s)". Simon is either authorized to enter into this Master Agreement as the owner, operator, manager or landlord of each of the properties listed on Exhibits "A" and "B" or is authorized to enter into this Master Agreement for and on behalf of the owner, operator, manager or landlord of each of the properties listed on Exhibits "A" and "B".

2.   A dispute has arisen between Simon/Landlord and Tenant as to the charges for the expenses of operating, maintaining and managing common areas commonly known as Common Area Maintenance Costs and Expenses as set forth in the Leases ("CAM Charges"). The term "CAM Charges" is intended to be broad enough to cover the language variations that may exist in the Leases and to include all obligations contained therein on the part of Tenant to contribute toward CAM Charges and by whatever term used in such Leases.

3.   In consideration of Landlord's execution of the agreements set forth in Exhibit "B" attached hereto, the sufficiency of which is hereby acknowledged and agreed, Tenant hereby releases and forever discharges Landlord, its officers, directors, shareholders, partners, agents, employees, successors and assigns from all claims, contracts, liabilities, obligations, misrepresentation, damages for money due, or cause of action of any kind or nature, whether known or unknown, fixed or contingent, liquidated or unliquidated, whether sounding in contract or tort,

Exhibit 3
(continued)

Page Two
Kimberly Keeler
September 2, 2009

including, but not limited to, all claims arising out of or related to CAM Charges under the Leases, by and between the parties, which Tenant now has, ever had or may ever have in the future against Landlord by reason of any matter whatsoever existing on or at any time prior to December 31, 2008.

4. In as much as Simon no longer has any ownership interest in the properties listed on Exhibit "C", in consideration of Simon's execution of the agreements set forth in Exhibit "B" attached hereto, the sufficiency of which is hereby acknowledged and agreed, Tenant hereby releases and forever discharges Simon, its officers, directors, shareholders, partners, agents, employees, successors and assigns from all claims, contracts, liabilities, obligations, misrepresentation, damages for money due, or cause of action of any kind or nature, whether known or unknown, fixed or contingent, liquidated or unliquidated, whether sounding in contract or tort, including, but not limited to, all claims arising out of or related to CAM Charges under the Leases, by and between the parties, which Tenant now has, ever had or may ever have in the future against Simon by reason of any matter whatsoever during the period Simon had ownership interest in said properties.

5. In the event that, in any Lease, for the purpose of calculating Tenant's pro rata share of any cost or expense (including, but not limited to, CAM Charges and Taxes), certain space defined as a "Major Tenant", "Department store", "variety or specialty store", "Anchor Store", or similar phrase (hereinafter collectively referred to as "Major Tenant"), is excluded from the denominator, then such space shall be deemed excluded regardless of whether it is vacant or occupied.

6. The terms of this Master Agreement are deemed to be incorporated into, and made a part of, each Lease. Simon/Landlord and Tenant agree that each will waive any claim or defense relating to the statute of frauds in any jurisdiction for the failure to amend in writing any Lease to reflect any of the changes, amendments, additions or deletions to the Lease created by, arising or resulting from this Master Agreement.

7. This Master Agreement shall inure to the benefit of, and be binding upon, the successors, assigns and legal and personal representatives of the parties.

8. If any one or more of the provisions of this Master Agreement is determined to be invalid, illegal, or unenforceable in any respect as to one or both of the parties, all remaining provisions nevertheless shall remain effective and binding on the parties, and the validity, legality and enforceability thereof shall not be affected or impaired thereby.

9. The persons signing this Master Agreement on behalf of Simon/Landlord and on behalf of Tenant are authorized to do so.

Exhibit 3
(continued)

Page Three
Kimberly Kneier
September 3, 2009

AGREED TO AND ACCEPTED THIS 4th DAY
OF February , 2010

SIMON PROPERTY GROUP, L.P.

By:
    Gary L. Lewis, Executive Vice President

RUBY TUESDAY, INC.

By:
    Name: Marguerite N. Duffy
    Title:  Senior Vice President
    Date:   November 3, 2009

Exhibit 3
(continued)

Ruby Tuesday
Exhibit "3"

| # | | |
|---|---|---|
| 1 | Arnot Mall | Ruby Tuesday |
| 2 | Bangor Mall | Ruby Tuesday |
| 3 | Battlefield Mall | Ruby Tuesday |
| 4 | Boynton Beach Mall | Ruby Tuesday |
| 5 | Brunswick Square | Ruby Tuesday |
| 6 | Century III Mall | Ruby Tuesday |
| 7 | Charleston Town Center | Ruby Tuesday |
| 8 | Chesapeake Square | Ruby Tuesday |
| 9 | Coliseum Mall | Ruby Tuesday |
| 10 | Crystal Mall | Ruby Tuesday |
| 11 | Fairfax Corner | Ruby Tuesday |
| 12 | Fashion Valley Shopping Center | Ruby Tuesday |
| 13 | Florida Mall | Ruby Tuesday |
| 14 | Franklin Mills | Ruby Tuesday |
| 15 | Granite Run Mall | Ruby Tuesday |
| 16 | Guynes Mall | Ruby Tuesday |
| 17 | Gwinnett Place | Ruby Tuesday |
| 18 | Hanover Mall | Ruby Tuesday |
| 19 | Haywood Mall | Ruby Tuesday |
| 20 | Knoxville Center | Ruby Tuesday |
| 21 | Lakeforest Mall | Ruby Tuesday |
| 22 | Lehigh Valley Mall | Ruby Tuesday |
| 23 | Lima Mall | Ruby Tuesday |
| 24 | Lincolnwood Town Center | Ruby Tuesday |
| 25 | Mall at Rockingham Park | Ruby Tuesday |
| 26 | Mall of Georgia | Ruby Tuesday |
| 27 | Mall at New Hampshire | Ruby Tuesday |
| 28 | Marley Station | Ruby Tuesday |
| 29 | Montgomery Mall | Ruby Tuesday |
| 30 | Hanover Mall | Ruby Tuesday |
| 31 | Northfield Square Mall | Ruby Tuesday |
| 32 | Northlake | Ruby Tuesday |
| 33 | Northpark Mall | Ruby Tuesday |
| 34 | Orland Square | Ruby Tuesday |
| 35 | Philadelphia Premium Outlets | Ruby Tuesday |
| 36 | Port Charlotte Town Center | Ruby Tuesday |
| 37 | Potomac Mills | Ruby Tuesday |
| 38 | Raleigh Springs | Ruby Tuesday |
| 39 | Richmond Town Square | Ruby Tuesday |
| 40 | Sangole Ridge Mall | Ruby Tuesday |
| 41 | South Hanover Mall | Ruby Tuesday |
| 42 | Springdale Center | Ruby Tuesday |
| 43 | Southern Park | Ruby Tuesday |
| 44 | St. Charles Towne Center | Ruby Tuesday |
| 45 | Steeplegate | Ruby Tuesday |
| 46 | The Avenues | Ruby Tuesday |
| 47 | The Mall at Tuttle Crossing | Ruby Tuesday |
| 48 | Town Center at Cobb | Ruby Tuesday |
| 49 | Treasure Coast Square | Ruby Tuesday |
| 50 | Valley Square | Ruby Tuesday |
| 51 | Valley Mall Mall | Ruby Tuesday |
| 52 | Virginia Center Commons | Ruby Tuesday |
| 53 | West Towne | Ruby Tuesday |
| 54 | Wire Grass Mall | Ruby Tuesday |
| 55 | Wolfchase Galleria | Ruby Tuesday |
| 56 | Wiregrass Village Town Center | Ruby Tuesday |

Exhibit 3
(continued)

Ruby Tuesday
Exhibit "B"

| | PROJECT NAME | DBA | DOCUMENT TYPE |
|---|---|---|---|
| 1 | Arsenal Mall | Ruby Tuesday | Agreement Canceling Lease |
| 2 | Boynton Beach Mall | Ruby Tuesday | Agreement Canceling Lease |
| 3 | Brunswick Square | Ruby Tuesday | First Amendment to Lease |
| 4 | Century III Mall | Ruby Tuesday | Agreement Canceling Lease |
| 5 | Gwinnett Place | Ruby Tuesday | Agreement Canceling Lease |
| 6 | Haywood Mall | Ruby Tuesday | Agreement Canceling Lease |
| 7 | The Mall at New Hampshire | Ruby Tuesday | First Amendment to Lease |
| 8 | The Mall at Rockingham Park | Ruby Tuesday | First Amendment to Lease |
| 9 | Northpark Mall | Ruby Tuesday | Agreement Canceling Lease |
| 10 | Richmond Town Square | Ruby Tuesday | Agreement Canceling Lease |

Exhibit 3
(continued)



| | | |
|---|---|---|
| 1 | Deptford Mall | Ruby Tuesday |
| 2 | Mall of America | Ruby Tuesday |

Exhibit 3
(continued)



Exhibit 4

U.S. Area Measurements, LLC and Rees Consulting, Inc (USAMRCG) v. Roby Townley, Inc.
CALCULATED LOST PROFIT BASED ON RISK FREE RATE OF RETURN



| CALCULATION SUMMARY | | |
|---|---|---|
| Annual Summary | Undiscounted Alpha Rent | Present Value Alpha Rent |
| 2009 | 507,261 | 503,843 |
| 2010 | 1,209,017 | 1,171,167 |
| 2011 | 830,155 | 783,797 |
| 2012 | 493,915 | 493,915 |
| 2013 | 451,383 | 422,330 |
| 2014 | 150,301 | 151,301 |
| 2015 | 125,444 | 99,300 |
| Total | 3,454,424 | 3,565,365 |

Risk Free Rate of Return (20-year Treasury Bond Yield) as of ... 4.19%

Risk Free Rate of Return (30-year Treasury Bond Yield) as of ... 4.45%

Exhibit 4
(continued)

U.S. Aero-Measurements, LLC and Ross Co.
CALCULATED LOST PROFIT BASED ON

| Ratio Tenant w/ Prospect Acquisition | Present Value Factor Midmarket | Present Value Alpha Rent 2014 | Alpha Rent 2014 | Present Value Factor Midmarket | Present Value Alpha Rent 2014 | Alpha Rent 2014 | Present Value Factor Midmarket | Present Value Alpha Rent 2014 | Alpha Rent 2014 | Present Value Factor Midmarket | Present Value Alpha Rent 2014 | Total Present Value Alpha Rent | Per Report Agreements Total Present Value (Gross Report) | Sediona Total Alpha in Term |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Richmond Heights, OH | 0.89142 | 160,673 | 189,667 | 0.85698 | 162,332 | 189,667 | 0.82196 | 155,958 | 126,444 | 0.78926 | 99,800 | 1,009,334 | 598,930 | 435,524 |
| Century III Mall, West Mifflin, PA | 0.89142 | - | - | 0.85698 | - | - | 0.82196 | - | - | 0.78926 | - | 164,721 | 88,775 | 78,545 |
| Northpark Mall, Ridgeland, MS | 0.89142 | - | - | 0.85698 | - | - | 0.82196 | - | - | 0.78926 | - | 213,299 | 102,287 | 111,000 |
| Arsenal Mall, Watertown, MA | 0.89142 | - | - | 0.85698 | - | - | 0.82196 | - | - | 0.78926 | - | 127,957 | 95,540 | 31,357 |
| Boynton Beach Mall, Boynton Beach, FL | 0.89142 | 270,742 | 308,719 | 0.85698 | 195,978 | 53,510 | 0.82196 | 20,904 | - | 0.78926 | - | 1,327,664 | 650,857 | 565,817 |
| Gwinnett Place Mall - Duluth, GA | 0.89142 | - | - | 0.85698 | - | - | 0.82196 | - | - | 0.78926 | - | 395,538 | 320,068 | 335,400 |
| Haywood Mall, Greenville, SC (1) | 0.89142 | - | - | 0.85698 | - | - | 0.82196 | - | - | 0.78926 | - | 226,991 | 157,662 | 71,229 |
| Total | | 479,915 | 498,385 | | 425,330 | 214,377 | | 176,701 | 126,444 | | 79,800 | 2,507,268 | 2,615,000 | 1,559,353 |

Exhibit 5

# BUYOUT CHECK LIST

**Buyout Details -- Kimberly Kneler**
1. Restaurant Name:                    Richmond Heights, OH
2. House Code:                         4328
3. Net Gross Amount to be Paid:        $598,830.00
4. Buyout Terms:                       FPB transferred to Landlord
5. Date of Signature:                  February 2, 2010
6. Date Buyout Funds Due:              February 26, 2010
7. Landlord Contact:                   Tish Glenn - (317) 488-6176

**Liquor License -- Nancy Coats**
1. Liquor License Specialist:          N/A
2. Value:                              N/A
3. Transfer Paperwork:                 N/A
3. Transfer Entity:                    N/A
4. Renewal Date:                       N/A
5. Renewal Fee:                        N/A
6. Notes:                              N/A

**Real Estate Taxes -- Leslie McFalls**
1. Paid to Municipality or LL:         RT pays Landlord directly in CAM.  [No taxes due.]
2. Calculations Needed:                N/A [provided by Leslie McFalls if applicable]
3. Notice to Municipality:             N/A [provided by Leslie McFalls if applicable]

**Monthly Payment -- Rebecca Swafford**
1. Paid to Date:                       31 days in August
2. Owed RT in Buyout Payment:          $0.00
3. Calculations for Buyout Payment:    Rent payable through August 31, 2009

**Utilities -- Melanie Bowling**
1. Date to cease utilities:            August 31, 2009

**Phone Lines & Burglar/Fire Alarms -- Kevin Carringer**
1. Date to cease operating:            August 31, 2009
2. Remove RT people from Call List:    August 31, 2009
3. Mail Forwarding:                    August 31, 2009 [Rick Pope]

**Facilities -- Danny Koontz**
1. Deadline to remove Property:        August 31, 2009
2. Property to be retrieved by RT:     N/A
3. Notification to Ops:                Danny will notify Operations not to enter the Premises after August 31, 2009.

**Finance -- Marcie Adams**
1. Final Payment Calculation:          $598,830.00 [Gross Buyout] - $0.00 [Prorated Rent/Tax Refund] = $598,830.00 [Net Gross to be Paid]

**Wiring Instructions -- Mindy Flegle & Janet Borden**
1. Receipt of Funds:                   Mindy & Janet will monitor the receipt of funds on February 26, 2010 and will notify us.
2. Due Date of Wire payment:           Friday 2/26/10
3. Landlord Banking Information:
   ❖ Bank Routing Number               074-000-065
   ❖ Account Number                    698-309-854
   ❖ Name of Bank/Address              National City Bank, Indianapolis, IN
   ❖ Name on the Account               SPG LP Clearing
   ❖ Special Instructions              Must transmit notification to Landlord
                                       The info that needs to be included when the tenant initiates the wire:

                                       * Tenant name
                                       * Entity
                                       * Notify Ashley Hoying at SPG Treasury Management at (317) 464-8909. (The tenant needs to convey this info to their bank to include on the wire)

Exhibit 5
(continued)

# BUYOUT CHECK LIST

**Buyout Details -- Kimberly Kneler**
1. Restaurant Name:                                Gwinnett Place Mall (Duluth, GA)
2. House Code:                                      3947
3. Net Gross Amount to be Paid:                    $310,068.00
4. Buyout Terms:                                    FFE transferred to Landlord
5. Date of Signature:                              February 2, 2010
6. Date Buyout Funds Due:                          February 26, 2010
7. Landlord Contact:                               Tish Glenn - (317) 488-6176

**Liquor License -- Nancy Coats**
1. Liquor License Specialist:                      N/A
2. Value:                                          N/A
3. Transfer Paperwork:                             N/A
3. Transfer Entity:                                N/A
4. Renewal Date:                                   N/A
5. Renewal Fee:                                    N/A
6. Notes:                                          N/A

**Real Estate Taxes -- Leslie McFalls**
1. Paid to Municipality or LL:                     RT pays Landlord directly in CAM.  [No taxes due.]
2. Calculations Needed:                            N/A [provided by Leslie McFalls if applicable]
3. Notice to Municipality:                         N/A [provided by Leslie McFalls if applicable]

**Monthly Payment -- Rebecca Swafford**
1. Paid to Date:                                   31 days in August
2. Owed RT in Buyout Payment:                      $0.00
3. Calculations for Buyout Payment:                Rent payable through August 31, 2009

**Utilities -- Melanie Bowling**
1. Date to cease utilities:                        August 31, 2009

**Phone Lines & Burglar/Fire Alarms -- Kevin Carringer**
1. Date to cease operating:                        August 31, 2009
2. Remove RT people from Call List:                August 31, 2009
3. Mail Forwarding:                                August 31, 2009 [Rick Pope]

**Facilities -- Danny Koontz**
1. Deadline to remove Property:                    August 31, 2009
2. Property to be retrieved by RT:                 N/A
3. Notification to Ops:                            Danny will notify Operations not to enter the Premises after August 31, 2009.

**Finance -- Marcie Adams**
1. Final Payment Calculation:                      $310,068.00 [Gross Buyout] - $0.00 [Prorated Rent/Tax Refund] = $310,068.00 [Net Gross to be Paid]

**Wiring Instructions -- Mindy Flegle & Janet Borden**
1. Receipt of Funds:                               Mindy & Janet will monitor the receipt of funds on February 26, 2010 and will notify us.
2. Due Date of Wire payment:                       Friday 2/26/10
3. Landlord Banking Information:
   ❖ Bank Routing Number                           074-000-065
   ❖ Account Number                                698-309-854
   ❖ Name of Bank/Address                          National City Bank, Indianapolis, IN
   ❖ Name on the Account                           SPG LP Clearing
   ❖ Special Instructions                          Must transmit notification to Landlord
                                                   The info that needs to be included when the tenant initiates the wire:

                                                   ✱ Tenant name
                                                   ✱ Entity
                                                   ✱ Notify Ashley Hoying at SPG Treasury Management at (317) 464-8909. (The tenant
                                                     needs to convey this info to their bank to include on the wire)

Exhibit 5
(continued)

# BUYOUT CHECK LIST

**Buyout Details -- Kimberly Kneier**
1. Restaurant Name:                     West Mifflin, PA
2. House Code:                          2888
3. Net Gross Amount to be Paid:         $88,776.00
4. Buyout Terms:                        FFE transferred to Landlord
5. Date of Signature:                   February 2, 2010
6. Date Buyout Funds Due:               February 26, 2010
7. Landlord Contact:                    Tish Glenn - (317) 488-6176

**Liquor License -- Sandra McFarland**
1. Liquor License Specialist:           N/A
2. Value:                               N/A
3. Transfer Paperwork:                  N/A
3. Transfer Entity:                     N/A
4. Renewal Date:                        N/A
5. Renewal Fee:                         N/A
6. Notes:                               N/A

**Real Estate Taxes -- Leslie McFalls**
1. Paid to Municipality or LL:          RT pays Landlord directly in CAM.  [No taxes due.]
2. Calculations Needed:                 N/A [provided by Leslie McFalls if applicable]
3. Notice to Municipality:              N/A [provided by Leslie McFalls if applicable]

**Monthly Payment -- Rebecca Swafford**
1. Paid to Date:                        31 days in August
2. Owed RT in Buyout Payment:           $0.00
3. Calculations for Buyout Payment:     Rent payable through August 31, 2009

**Utilities -- Melanie Bowling**
1. Date to cease utilities:             August 31, 2009

**Phone Lines & Burglar/Fire Alarms -- Kevin Carringer**
1. Date to cease operating:             August 31, 2009
2. Remove RT people from Call List:     August 31, 2009
3. Mail Forwarding:                     August 31, 2009 [Rick Pope]

**Facilities -- Danny Koontz**
1. Deadline to remove Property:         August 31, 2009
2. Property to be retrieved by RT:      May remove merchandise, personal property, and trade fixtures, and vendor owned equipment.
3. Notification to Ops:                 Danny will notify Operations not to enter the Premises after August 31, 2009.

**Finance -- Marcie Adams**
1. Final Payment Calculation:           $88,776.00 [Gross Buyout] - $0.00 [Prorated Rent/Tax Refund] = $88,776.00 [Net Gross to be Paid]

**Wiring Instructions -- Mindy Flegle & Janet Borden**
1. Receipt of Funds:                    Mindy & Janet will monitor the receipt of funds on February 26, 2010 and will notify us.
2. Due Date of Wire payment:            Friday 2/26/10
3. Landlord Banking Information:
   ❖ Bank Routing Number                074-000-065
   ❖ Account Number                     698-309-854
   ❖ Name of Bank/Address               National City Bank, Indianapolis, IN
   ❖ Name on the Account                SPG LP Clearing
   ❖ Special Instructions               Must transmit notification to Landlord
                                        The info that needs to be included when the tenant initiates the wire:

                                        ✳ Tenant name
                                        ✳ Entity
                                        ✳ Notify Ashley Hoying at SPG Treasury Management at (317) 464-8909. (The tenant
                                           needs to convey this info to their bank to include on the wire)

Exhibit 5
(continued)

# BUYOUT CHECK LIST

*Actually Paid #172,560.25 (explanation attached in an email 2/24/10, dated ...)*

**Buyout Details -- Kimberly Kneier**
1. Restaurant Name:                          Ridgeland, MS
2. House Code:                               2601
3. Net Gross Amount to be Paid:              $102,287.00
4. Buyout Terms: .............. FF&E transferred to Landlord
5. Date of Signature: ..............          February 2, 2010
6. Date Buyout Funds Due: .....              February 26, 2010
7. Landlord Contact:                         Tish Glenn - (317) 488-6176

**Liquor License -- Cindy Soloman**
1. Liquor License Specialist:                N/A
2. Value:                                    N/A
3. Transfer Paperwork:                       N/A
3. Transfer Entity:                          N/A
4. Renewal Date:                             N/A
5. Renewal Fee:                              N/A
6. Notes:                                    N/A

**Real Estate Taxes -- Leslie McFalls**
1. Paid to Municipality or LL:               RT pays Landlord directly in CAM.  [No taxes due.]
2. Calculations Needed:                      N/A [provided by Leslie McFalls if applicable]
3. Notice to Municipality:                   N/A [provided by Leslie McFalls if applicable]

**Monthly Payment -- Rebecca Swafford**
1. Paid to Date:                             31 days in August
2. Owed RT in Buyout Payment:                $0.00
3. Calculations for Buyout Payment:          Rent payable through August 31, 2009

**Utilities -- Melanie Bowling**
1. Date to cease utilities:                  August 31, 2009

**Phone Lines & Burglar/Fire Alarms -- Kevin Carringer**
1. Date to cease operating:                  August 31, 2009
2. Remove RT people from Call List:          August 31, 2009
3. Mail Forwarding:                          August 31, 2009 [Rick Pope]

**Facilities -- Danny Koontz**
1. Deadline to remove Property:              August 31, 2009
2. Property to be retrieved by RT:           N/A
3. Notification to Ops:                      Danny will notify Operations not to enter the Premises after August 31, 2009.

**Finance -- Marcie Adams**
1. Final Payment Calculation:                $102,287.00 [Gross Buyout] - $0.00 [Prorated Rent/Tax Refund] = $102,287.00 [Net Gross to be Paid]

**Wiring Instructions -- Mindy Fleglo & Janet Borden**
1. Receipt of Funds:                         Mindy & Janet will monitor the receipt of funds on February 26, 2010 and will notify us.
2. Due Date of Wire payment:                 Friday 2/26/10
3. Landlord Banking Information:
   ❖ Bank Routing Number                     074-000-065
   ❖ Account Number                          698-309-854
   ❖ Name of Bank/Address                    National City Bank, Indianapolis, IN
   ❖ Name on the Account                     SPG LP Clearing
   ❖ Special Instructions                    Must transmit notification to Landlord
                                             The info that needs to be included when the tenant initiates the wire:
                                             ▪ Tenant name
                                             ▪ Entity
                                             ▪ Notify Ashley Hoying at SPG Treasury Management at (317) 464-8909. (The tenant needs to convey this info to their bank to include on the wire)

Exhibit 5
(continued)

## Sue Coley

| | |
|---|---|
| From: | Maura Fry |
| Sent: | Friday, February 26, 2010 2:11 PM |
| To: | Margie Duffy; Janet Borden; Kimberly Kneier; Marcie Adams; Melanie Bowling; Mindy Fiegle |
| Cc: | Sue Coley; Tammie Cunningham; Kevin Reeve; Scarlett May |
| Subject: | RE: Simon Package - Buyout Checklists |
| Attachments: | FW: Ruby Tuesday RUBTU// #2601 @ Northpark Mall (MS) 5256 |

Payment was decreased on Ridgeland because there had previously been some rent overpayments and a CAM adjustment. This was sent to us by Brett Saunders at Simon. (see attached)

Maura

---

**From:** Margie Duffy
**Sent:** Friday, February 26, 2010 2:04 PM
**To:** Janet Borden; Kimberly Kneier; Marcie Adams; Melanie Bowling; Mindy Fiegle
**Cc:** Sue Coley; Tammie Cunningham; Maura Fry; Kevin Reeve; Scarlett May
**Subject:** Re: Simon Package - Buyout Checklists

Why the decrease?

---

**From:** Janet Borden
**To:** Kimberly Kneier; Margie Duffy; 'Walter Cole' <wcolejr@charter.net>; Walter Cole; Rebecca Swafford; Leslie McFalls; Kevin Carringer; Marcie Adams; Melanie Bowling; Nancy Coats; Sandra McFarland; Danny Koontz; Mindy Fiegle
**Cc:** Sue Coley; Tammie Cunningham; Maura Fry; Kevin Reeve; Scarlett May; Electronic Payments; Spencer Dukes; Rick Pope
**Sent:** Fri Feb 26 13:56:04 2010
**Subject:** RE: Simon Package - Buyout Checklists

Just wanted to let everyone know that the below wire has been released and I have notified the LL. Per Maura's email yesterday the buyout for HC2601 (Ridgeland MS) was changed from $102,287.00 to $72,560.25 making the total wire $1,827,611.25.

Thanks!
Janet Borden
Cash Management
Phone (865) 379-5770
Fax (865) 379-6827
Email jborden@rubytuesday.com

---

**From:** Kimberly Kneier
**Sent:** Friday, February 05, 2010 11:57 AM
**To:** Margie Duffy; Walter Cole; Walter Cole; Rebecca Swafford; Leslie McFalls; Kevin Carringer; Marcie Adams; Melanie Bowling; Nancy Coats; Sandra McFarland; Danny Koontz; Mindy Fiegle; Janet Borden
**Cc:** Sue Coley; Tammie Cunningham; Maura Fry; Kevin Reeve; Scarlett May; Electronic Payments; Spencer Dukes; Rick Pope
**Subject:** Simon Package - Buyout Checklists

Please find attached Buyout Checklists for the following restaurants.

1

Exhibit 5
(continued)

# BUYOUT CHECK LIST

**Buyout Details – Kimberly Kneier**
1. Restaurant Name:                  Watertown, MA
2. House Code:                       4597
3. Net Gross Amount to be Paid:      $96,540.00
4. Buyout Terms:                     FFE transferred to Landlord
5. Date of Signature:                February 2, 2010
6. Date Buyout Funds Due:            February 26, 2010
7. Landlord Contact:                 Tish Glenn - (317) 488-6176

**Liquor License – Nancy Coats**
1. Liquor License Specialist:        N/A
2. Value:                            N/A
3. Transfer Paperwork:               N/A
3. Transfer Entity:                  N/A
4. Renewal Date:                     N/A
5. Renewal Fee:                      N/A
6. Notes:                            N/A

**Real Estate Taxes – Leslie McFalls**
1. Paid to Municipality or LL:       RT pays Landlord directly in CAM. [No taxes due.]
2. Calculations Needed:              N/A [provided by Leslie McFalls if applicable]
3. Notice to Municipality:           N/A [provided by Leslie McFalls if applicable]

**Monthly Payment – Rebecca Swafford**
1. Paid to Date:                     31 days in August
2. Owed RT in Buyout Payment:        $0.00
3. Calculations for Buyout Payment:  Rent payable through August 31, 2009

**Utilities – Melanie Bowling**
1. Date to cease utilities:          August 31, 2009

**Phone Lines & Burglar/Fire Alarms – Kevin Carringer**
1. Date to cease operating:          August 31, 2009
2. Remove RT people from Call List:  August 31, 2009
3. Mail Forwarding:                  August 31, 2009 [Rick Pope]

**Facilities – Danny Koontz**
1. Deadline to remove Property:      August 31, 2009
2. Property to be retrieved by RT:   N/A
3. Notification to Ops:              Danny will notify Operations not to enter the Premises after August 31, 2009.

**Finance – Marcie Adams**
1. Final Payment Calculation:        $96,540.00 [Gross Buyout] - $0.00 [Prorated Rent/Tax Refund] = $96,540.00 [Net Gross to be Paid]

**Wiring Instructions – Mindy Fiegle & Janet Borden**
1. Receipt of Funds:                 Mindy & Janet will monitor the receipt of funds on February 26, 2010 and will notify us.
2. Due Date of Wire payment:         Friday 2/26/10
3. Landlord Banking Information:
   - Bank Routing Number             074-000-065
   - Account Number                  698-309-854
   - Name of Bank/Address            National City Bank, Indianapolis, IN
   - Name on the Account             SPG LP Clearing
   - Special Instructions            Must transmit notification to Landlord
                                     The info that needs to be included when the tenant initiates the wire:

      - Tenant name
      - Entity
      - Notify Ashley Hoying at SPG Treasury Management at (317) 464-8909. (The tenant needs to convey this info to their bank to include on the wire)

Exhibit 5
(continued)

# BUYOUT CHECK LIST

**Buyout Details -- Kimberly Kneier**
1. Restaurant Name:                          Boynton Beach, FL
2. House Code:                               2153
3. Net Gross Amount to be Paid:              $660,837.00
4. Buyout Terms:                             FFE transferred to Landlord
5. Date of Signature:                        February 2, 2010
6. Date Buyout Funds Due:                    February 26, 2010
7. Landlord Contact:                         Tish Glenn - (317) 488-6176

**Liquor License -- Sandra McFarland**
1. Liquor License Specialist:                N/A
2. Value:                                    N/A
3. Transfer Paperwork:                       N/A
3. Transfer Entity:                          N/A
4. Renewal Date:                             N/A
5. Renewal Fee:                              N/A
6. Notes:                                    N/A

**Real Estate Taxes -- Leslie McFalls**
1. Paid to Municipality or LL:               RT pays Landlord directly in CAM.  [No taxes due.]
2. Calculations Needed:                      N/A [provided by Leslie McFalls if applicable]
3. Notice to Municipality:                   N/A [provided by Leslie McFalls if applicable]

**Monthly Payment -- Rebecca Swafford**
1. Paid to Date:                             31 days in August
2. Owed RT in Buyout Payment:                $0.00
3. Calculations for Buyout Payment:          Rent payable through August 31, 2009

**Utilities -- Melanie Bowling**
1. Date to cease utilities:                  August 31, 2009

**Phone Lines & Burglar/Fire Alarms -- Kevin Carringer**
1. Date to cease operating:                  August 31, 2009
2. Remove RT people from Call List:          August 31, 2009
3. Mail Forwarding:                          August 31, 2009 [Rick Pope]

**Facilities -- Danny Koontz**
1. Deadline to remove Property:              August 31, 2009
2. Property to be retrieved by RT:           N/A
3. Notification to Ops:                      Danny will notify Operations not to enter the Premises after August 31, 2009.

**Finance -- Marcie Adams**
1. Final Payment Calculation:                $660,837.00 [Gross Buyout] - $0.00 [Prorated Rent/Tax Refund] = $660,837.00 [Net Gross to be
                                             Paid]

**Wiring Instructions -- Mindy Piegle & Janet Borden**
1. Receipt of Funds:                         Mindy & Janet will monitor the receipt of funds on February 26, 2010 and will notify us.
2. Due Date of Wire payment:                 Friday 2/26/10
3. Landlord Banking Information:
    ❖ Bank Routing Number                    074-000-065
    ❖ Account Number                         698-309-854
    ❖ Name of Bank/Address                   National City Bank, Indianapolis, IN
    ❖ Name on the Account                    SPG LP Clearing
    ❖ Special Instructions                   Must transmit notification to Landlord
                                             The info that needs to be included when the tenant initiates the wire:

                                             ▪ Tenant name
                                             ▪ Entity
                                             ▪ Notify Ashley Heying at SPG Treasury Management at (317) 464-8909. (The tenant
                                               needs to convey this info to their bank to include on the wire)

Exhibit 5
(continued)
3645

# BUYOUT CHECK LIST

**Buyout Details — Kimberly Kneier**
1. Restaurant Name:               Greenville, SC (Haywood Mall)
2. House Code:                    3645
3. Net Gross Amount to be Paid:   $156,828.06
4. Buyout Terms:                  Premises surrendered 1/31/10
5. Date of Signature:             July 13, 2010
6. Date Buyout Funds Due:         July 20, 2010
7. Landlord Contact:              Tish Glenn - (317) 488-6176

**Liquor License — Nancy Coats**
1. Liquor License Specialist:     N/A
2. Value:                         N/A
3. Transfer Paperwork:            N/A
3. Transfer Entity:               N/A
4. Renewal Date:                  N/A
5. Renewal Fee:                   N/A
6. Notes:                         N/A

**Real Estate Taxes — Leslie McFalls**
1. Paid to Municipality or LL:    RT pays Landlord directly in rent [No taxes due.]
2. Calculations Needed:           N/A [provided by Leslie McFalls if applicable]
3. Notice to Municipality:        N/A [provided by Leslie McFalls if applicable]

**Monthly Payment — Rebecca Swafford**
1. Paid to Date:                  31 days in January
2. Owed RT in Buyout Payment:     $833.94
3. Calculations for Buyout Payment: Rent payable through January 31, 2010
4. Notes:                         2009 Real Estate Taxes paid in the amount of $833.94 to be credited against the Buyout Amount.
                                  [Haven't received invoice for 2009 but could be approximately 40k.]

**Utilities — Melanie Bowling**
1. Date to cease utilities:       January 31, 2010

**Phone Lines & Burglar/Fire Alarms — Kevin Carringer**
1. Date to cease operating:       January 31, 2010
2. Remove RT people from Call List: January 31, 2010
3. Mail Forwarding:               January 31, 2010 [Rick Pope]

**Facilities — Danny Koontz**
1. Deadline to remove Property:   January 31, 2010
2. Property to be retrieved by RT: N/A
3. Notification to Ops:           Danny will notify Operations not to enter the Premises after January 31, 2010.

**Finance — Marcie Adams**
1. Final Payment Calculation:     $157,662.00 [Gross Buyout] - $833.94 [Prorated Rent/Tax Refund] = $156,828.06 [Net Gross to be
                                  Paid] per email from Simon.

**Wiring Instructions — Mindy Biegle & Janet Borden**
1. Receipt of Funds:              Mindy & Janet will monitor the receipt of funds on July 20, 2010 and will notify us.
2. Due Date of Wire payment:      Tuesday July 20, 2010
3. Landlord Banking Information:
   ❖ Bank Routing Number          074-000-065
   ❖ Account Number               698-309-854
   ❖ Name of Bank/Address         National City Bank, Indianapolis, IN
   ❖ Name on the Account          SPG LP Clearing
   ❖ Special Instructions         Must transmit notification to Landlord
                                  The info that needs to be included when the tenant initiates the wire:

      ▪ Tenant name
      ▪ Entity
      ▪ Notify Ashley Hoying at SPG Treasury Management at (317) 464-8909. (The tenant
        needs to convey this info to their bank to include on the wire)

| HC | City | State | Monthly Rent | Monthly All-In | Total to Term | Lease Exp Date | Closing Date | Total Rent Only |
|---|---|---|---|---|---|---|---|---|
| 4328 | Richmond Heights ✓ | OH | $8,158.50 | $15,805.56 | $1,178,909.20 | 2/28/45 | 12/7/08 | 608,528 |
| 2888 | West Mifflin | PA | $7,896.17 | $16,853.65 | $202,243.84 | 12/30/10 | 12/7/08 | 94,754 |
| 2601 | Ridgeland | MS | $10,766.25 | $19,858.71 | $258,163.23 | 12/31/10 | 12/28/08 | 139,961 |
| 4597 | Watertown (Arsenal Mall) ✓ | MA | $9,888.50 | $25,891.14 | $181,237.98 | 1/31/09 | 1/4/09 | 69,080 |
| 2153 | Boynton Bch ✓ | FL | $10,833.33 | $25,309.88 | $1,422,876.72 | 5/31/20 | 1/18/09 | 609,031 |
| 3947 | Duluth (Gwinnett Place) ✓ | GA | $12,566.25 | $23,096.38 | $689,795.02 | 6/30/15 | 5/7/06 | 364,421 |



Exhibit 6

Exhibit 6

Exhibit 7

Exhibit
11 Duffy

Simon Deals

| | Lease Expir | NPV Rent Only through Lease Expiration | NPV Rent Only to 2 years max | Q4 Reserve | Comments from Reserve Meeting |
|---|---|---|---|---|---|
| 3947 Gwinnett | 10/31/2011 | $ 304,402 | $ 304,402 | $ 264,414 | reserve 174k plus 4 months rent |
| 4328 Richmond Heights | 8/31/2015 | $ 470,458 | $ 255,075 | $ 195,804 | reserve 2 years |
| 2888 West Mifflin | 6/30/2010 | $ 91,232 | $ 91,232 | $ 71,065 | reserve 6 months |
| 2601 Ridgeland | 7/31/2010 | $ 134,422 | $ 134,422 | $ 96,896 | reserve 9 months |
| 4597 Arsenal Mall | 1/31/2010 | $ 67,354 | $ 67,354 | $ 25,891 | reserve 1 month all in rent; to stop rent 7/1/09 |
| 2153 Boynton Beach | 1/31/2014 | $ 532,703 | $ 348,301 | $ 259,992 | reserve 2 years |
| 3930 Akron | 6/30/2009 | $ - | $ - | $ - | LLD owes us $100k |
| | | $ 1,600,571 | $ 1,200,786 | $ 914,062 | |

Please note: Lease param #3436 was replaced by Akron #3930 in the Simon deal per KK

Exhibit 8

# RubyTuesday

1150 WEST CHURCH AVENUE
MARYVILLE. TENNESSE 37801
P: 865-379-5700
WWW.RUBYTUESDAY.COM

May 11, 2010

<u>CERTIFIED MAIL – RETURN RECEIPT REQUESTED</u>

Mr. Martin C. Mayer, MMR
Mr. Charles Ross
U.S. Accu-Measurements, LLC
P.O. Box 741173
Boynton Beach, Florida  33474-1173

Dear Messrs. Mayer and Ross:

We are in receipt of your letters, both the one you sent to Sandy Beall on March 7, 2010 and the others you referenced in that letter.  While we apologize for not responding as quickly as you would have liked, please know the reason for such timing was that there were still matters in play regarding one of the key landlords that we wanted to resolve.

Regretfully, the work that U.S. Accu-Measurements ("USAM") did for us with regard to *Simon Properties did not net any savings to Ruby Tuesday, Inc. ("RTI"), directly* or indirectly.  Simon is, as you know, a large enough player that they have the ability to exercise considerable more leverage in the industry than other landlords.  Though we sought to use your company's findings to financial benefit when in negotiations with Simon regarding a number of matters (lease termination/buyouts and renewals), the CAM audit issue was a non-starter for them and at the end of the day were simply set aside for their purposes.  We simply had too many reasons to keep the larger relationship with Simon going smoothly, as we need their cooperation for so many RTI properties.

I am glad to report that we were, however, able to use the USAM findings to obtain a favorable result in negotiating a settlement with General Growth Properties ("GGP") regarding a closed property in ST. Petersburg, FL (Mizner Park), which RTI formerly operated then was operated by Specialty Restaurant Group, LLC (but RTI continued to have liability for rent).  GGP, noting the CAM issues with RTI that they acknowledged though the value of which they disputed, forgave the $165,000 outstanding rent owed on that Mizner Park location in return for a release of all CAM issues with RTI.

*Accordingly, per our agreement with USAM as successor in interest to Charles Ross* Group, RTI is prepared to pay 50% of the cost savings achieved with respect to the Mizner Park CAM settlement, or $82,500, a check for which amount is also enclosed. We regret that more savings were not achieved, but we are grateful to USAM for its work in achieving what we did.

SIMPLE  FRESH  AMERICAN  DINING

Exhibit 8
(continued)

Messrs. Meyer and Ross
May 11, 2010
Page Two


Finally, pursuant to our contract with you, we are hereby providing thirty (30) days'
notice of our intent to terminate the contract. Please let me know if you have any
questions.

Sincere regards,

Kevin Reeve
Vice President & Asst. Gen. Counsel


cc: Samuel E. Beall, III

Enclosure

Exhibit 8
(continued)

| U S ACCU MEASUREMENTS LLC | Vendor ID / Location | Reference Number |
| --- | --- | --- |
| PO BOX 741173 | | 0002640987 |
| BOYNTON, FL 33474 | Check Sort Code: | RENTCK |

| Unit Number/Name | Invoice Number | Invoice Date | Gross Amount | Discount Amount | Net Amount |
| --- | --- | --- | --- | --- | --- |
| 533 | CONSULTING FEE | 05/10/2010 | 82,500.00 | 0.00 | 82,500.00 |

82,500.00

**WARNING: THIS CHECK IS PROTECTED BY SPECIAL SECURITY FEATURES**

Ruby Tuesday

150 West Church Avenue
Maryville, TN 37801

Wachovia Bank, National Association
Chapel Hill, NC 27514

66-156
531

Reference Number
0002640987

| Date | Payment Amount |
| --- | --- |
| 05/11/2010 | ***************$82,500.00 |

Eighty-two thousand five hundred and 00/100 Dollars

Pay to the order of

U S ACCU MEASUREMENTS LLC
PO BOX 741173
BOYNTON FL 33474

Authorized Signature

SIGNATURE HAS A COLORED BACKGROUND • BORDER CONTAINS MICROPRINTING

THIS CHECK IS VOID WITHOUT A BLUE & BURGUNDY BACKGROUND AND AN ARTIFICIAL WATERMARK ON THE BACK • HOLD AT ANGLE TO VIEW

⑈0264098 7⑈  ⑆053 10 156 1⑆  2079 9005 13273⑈