UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| **U.S. ACCU-MEASUREMENTS,** **LLC,** *et al.*, | : | Civ. No. 2:10-5011 (KM) |
| | : | |
| **Plaintiffs,** | : | **AMENDED OPINION** |
| | : | |
| **v.** | : | |
| | : | |
| **RUBY TUESDAY, INC.,** | : | |
| | : | |
| **Defendant.** | : | |

**KEVIN MCNULTY, U.S.D.J.:**

This action arises from a dispute between Ruby Tuesday, Inc. ("Ruby Tuesday"), and two of its external lease auditors, U.S. Accu-Measurements, LLC ("USAM"), and Ross Consulting Group, Inc. ("RCG").[1] USAM and RCG undertook to audit leases to determine if Ruby Tuesday, a restaurant chain, was being overcharged by its landlords. The agreements between Ruby Tuesday and the auditors contained a contingent fee arrangement, the scope of which is disputed. As plaintiffs, USAM and RCG claim a percentage of overcharges uncovered by their audits. The plaintiffs also contend that Ruby Tuesday used or should have used the audit results to prise favorable settlements from the landlords, and claim a share of the resulting savings as well.

USAM and RCG have proffered the report of an expert on damages, Lawrence Chodor. Pursuant to *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993), and Federal Rule of Evidence 702, Ruby Tuesday has moved to preclude Chodor from testifying. Ruby Tuesday's motion includes a summary judgment component because it alleges that, once Chodor's testimony is excluded, USAM cannot make a *prima facie* case of damages.

Ruby Tuesday has proffered the reports of its own damages expert, David H. Glusman, and an expert on the restaurant business, Ronald N. Gorodesky. USAM and RCG have cross-moved to exclude their testimony.

---

[1]    USAM and RCG are apparently joint venture partners. (Wiss Report at 1, Ex. M to DSMF [ECF No. 15-18]).

I find that the proffered expert testimony comports with the applicable legal standards under Rule 702 and *Daubert*. I will therefore deny both parties' motions.

## I.   FACTS & PROCEDURAL HISTORY[2]

### A. The USAM and RCG Agreements

Ruby Tuesday engaged USAM and RCG to audit certain leases. The audits were to focus on overcharges or inaccuracies in common area maintenance ("CAM") charges for which landlords billed Ruby Tuesday. (Def. Statement of Material Facts ("DSMF") ¶ 2 [ECF No. 15-2]). Ruby Tuesday entered into two relevant audit agreements: the USAM Agreement and the RCG Agreement.

The USAM Agreement, dated May 29, 1998, is confined to certain listed leases. (Ex. A to DSMF at 2 [ECF No. 15-4]). It states that USAM is to be paid a contingent fee, based upon

> a realization in fact by [Ruby Tuesday] of refunds made by landlords or their assigns, predicated upon information documented by [USAM] that overcharges in fact occurred. Remuneration is to be made . . . only when, as and if refunds and cost reductions are realized, as received by [Ruby Tuesday], and whether in cash, kind, or by way of rental credit.

(*Id.* at 1).

That contingent fee is to be calculated in two ways. USAM is to receive

---

[2]     Pursuant to L. Civ. R. 56.1, Ruby Tuesday has submitted a statement of material facts that it believes are undisputed and USAM has filed a corresponding response. The facts discussed here are taken from these submissions, attached exhibits, supporting affidavits, and, where appropriate, legal memoranda.

In its Reply Brief, Ruby Tuesday argues that many of USAM's responses to Ruby Tuesday's undisputed facts are deficient, and urges that they be deemed admissions. (Reply Br. at 2-9 [ECF No. 21]). I have reviewed the allegedly deficient responses and for the most part do not find them to be improper. Even assuming *arguendo* that they were, genuine issues of material fact would still exist as to liability and damages, as discussed below.

- 50% of Ruby Tuesday's gross monetary recovery for overpayments from the date of the lease's inception through the year the lease was analyzed, and
- 25% of the gross adjustments and/or corrections of overcharges which would have taken place over the five years subsequent to the year the lease was analyzed.

(*Id.*). Both sides pledge "good faith cooperation" to achieve effective results for Ruby Tuesday under the Agreement. (*Id.* at 2).

The RCG Agreement, dated April 6, 2001, is confined to leases with a particular landlord, the Simon Property Group ("Simon Property"). (Ex. B to DSMF at 1-2 [ECF No. 15-5]). It incorporates the contingent fee structure of the USAM Agreement. (*Id.*). It contains an additional provision in which Ruby Tuesday "agrees to immediately advise RCG if Landlord attempts to negotiate a settlement(s) directly with [Ruby Tuesday]. If [Ruby Tuesday] elects to negotiate directly with Landlord, [Ruby Tuesday] agrees to work closely with RCG during said negotiations and to fully disclose the terms of the proposed and final settlement(s) to RCG." (*Id.* at 2).

### B. The USAM Audit and the General Growth Properties Settlement

Around 2001, USAM prepared an audit of Ruby Tuesday's leases with General Growth Properties ("General Growth"), the landlord for two Ruby Tuesday-operated restaurants at the Mizner Park mall in Boca Raton, Florida. (*Id.* ¶¶ 15, 19). That audit found that Ruby Tuesday had a $900,000 claim (*id.* ¶ 21), which General Growth disputed (*id.* ¶ 28).

In 2009, Ruby Tuesday and General Growth reached a settlement (the "General Growth Settlement") with respect to the early termination of the lease for a closed restaurant at the Mizner Park mall. (*Id.* ¶ 47). Ruby Tuesday agreed to waive the claims in the USAM audit report and, in exchange, General Growth forgave $165,000 in back rent. Ruby Tuesday then paid RCG $82,500; that represented RCG's 50% share, under the RCG Agreement, of the $165,000 in back rent saved in the General Growth Settlement. (*Id.* ¶ 48).

### C. The RCG Audit and the Simon Property Group Settlement

Around 2003, RCG prepared a lease audit involving 27 Ruby Tuesday restaurants at shopping centers owned by Simon Property. (DSMF ¶¶ 15-16). The audit report established a total claim of $1,052,000.00 against the landlord, Simon Property. (*Id.* ¶ 21).

In 2009, Ruby Tuesday began negotiating with Simon Property for the early termination of leases for seven restaurants located in Simon Property shopping centers. (*Id.* ¶ 40). Simon threatened to end negotiations on the lease terminations unless Ruby Tuesday dropped all claims based on the issues identified in RCG's audit report. (*Id.* ¶ 41).

Ruby Tuesday did drop the claims identified in the RCG audit report. Indeed, to terminate these leases early, Ruby Tuesday paid Simon Property $2,015,000. That payment represented 47.3% of the total future rents that would have come due if the terminated leases had remained in effect for their full terms. (the "Simon Property Settlement"). (*Id.* ¶¶ 42-43).

### D. USAM Files Suit

On August 26, 2010, USAM and RCG filed a civil complaint in the Superior Court of New Jersey, Chancery Division, Essex County. The Complaint alleged that Ruby Tuesday had failed to pay the contingent fees owed to USAM and RCG in the wake of the Simon Property and General Growth Settlements. It included causes of action for breach of contract, breach of express and implied covenants of good faith and fair dealing, unjust enrichment, and an accounting.

On September 29, 2010, Ruby Tuesday timely removed the case to this Court. USAM is a limited liability company whose sole member, Martin C. Mayer, is a citizen of Florida. RCG is a New Jersey corporation with its principal place of business in New Jersey. Ruby Tuesday is a corporation formed under the laws of Georgia with its principal place of business in Tennessee. Because there is complete diversity of citizenship and the amount in controversy exceeds $75,000, subject matter jurisdiction is proper. 28 U.S.C. § 1332. Venue is proper because this District encompasses the state court where the action was originally filed. 28 U.S.C. § 1441(a).

On January 12, 2012, Ruby Tuesday filed this Motion to Exclude Expert Testimony and for Summary Judgment. On February 7, 2012, USAM and RCG filed a Cross-Motion to Exclude Expert Testimony. The motions were administratively terminated to permit mediation, but they were restored to the calendar on August 2, 2012.

## II.    LEGAL STANDARD

### A. Expert Testimony

Federal Rule of Evidence 702 ("Rule 702"), which covers the admissibility of expert testimony, provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
>> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>>
>> (b) the testimony is based on sufficient facts or data;
>>
>> (c) the testimony is the product of reliable principles and methods; and
>>
>> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

"Rule 702 embodies a trilogy of restrictions on expert testimony: qualification, reliability and fit." *Schneider ex rel. Estate of Schneider v. Fried,* 320 F.3d 396, 404 (3d Cir. 2003) (citing *In re Paoli R.R. Yard PCB Litig.,* 35 F.3d 717, 741-43 (3d Cir. 1994) (citing *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579 (1993))).

"Qualification refers to the requirement that the witness possess specialized expertise." *Schneider,* 320 F.3d at 404. This is interpreted liberally: "a broad range of knowledge, skills, and training qualify an expert." *Paoli,* 35 F.3d at 741. A reliable opinion is "based on 'the methods and procedures of science' rather than on 'subjective belief or unsupported speculation.'" *Paoli,* 35 F.3d at 742 (citing *Daubert,* 509 U.S. at 590). Reliability is a "flexible" test. *Kumho Tire Co., Ltd. v. Carmichael,* 526 U.S. 137, 141 (1999) (internal citation omitted). Last, the expert opinion must fit the issues in the case, *i.e.,* it must be relevant and "assist the trier of fact." *Paoli,* 35 F.3d at 742-43.

Rule 702 also requires that "[t]he party offering the proposed expert

testimony bear[] the burden of establishing the admissibility of the testimony by a preponderance of the evidence." *In re Human Tissue Products Liab. Litig.*, 582 F. Supp. 2d 644, 655 (D.N.J. 2008) (citing *Padillas v. Stork-Gamco, Inc.*, 186 F.3d 412, 417-18 (3d Cir. 1999). The inquiry requires the court to "examine the expert's conclusions in order to determine whether they could reliably follow from the facts known to the expert and the methodology used." *Heller v. Shaw Indus., Inc.*, 167 F.3d 146, 153 (3d Cir. 1999).

The District Court serves as a gatekeeper to prevent expert testimony that falls short of these requirements from reaching the jury. *Daubert*, 509 U.S. at 592-95. A judge has "the same broad latitude when it decides *how* to determine reliability as it enjoys in respect to its ultimate reliability determination." *Kumho Tire*, 526 U.S. at 142 (internal citation omitted) (emphasis in original).

### B. Summary Judgment

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (summary judgment is appropriate where "there is no genuine issue of material fact to be resolved and the moving party is entitled to judgment as a matter of law"); *Alcoa, Inc. v. U.S.*, 509 F.3d 173, 175 (3d Cir. 2007). Summary judgment is desirable because it eliminates unfounded claims without resort to a costly and lengthy trial, *Celotex*, 477 U.S. at 327, but a court should grant summary judgment only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

"[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The burden of showing that no genuine issue of material fact exists rests initially on the moving party. *Celotex*, 477 U.S. at 323. Once the moving party has made a properly supported motion for summary judgment, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *see Anderson*, 477 U.S. at 247-48. In evaluating a summary judgment motion, a court must view all evidence in the light most favorable to the nonmoving party. *Matsushita Elec.*

*Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Goodman v. Mead Johnson & Co.*, 534 F.2d 566, 573 (3d Cir. 1976).

### III.   ANALYSIS

Each party argues that the other's expert testimony should be excluded for failure to meet the standards set forth in Rule 702 and *Daubert*. Ruby Tuesday also moves for summary judgment on the grounds that if the plaintiffs' expert is excluded, they cannot make a *prima facie* case of breach of contract.

    A.  <u>Ruby Tuesday's Motion to Exclude the Wiss Report (Chodor) Testimony</u>

Ruby Tuesday contends that the testimony of the plaintiffs' damages expert, Lawrence Chodor, is not reliable and should be excluded. Ruby Tuesday contends that (1) Chodor accepted the plaintiffs' version of the facts without verifying or analyzing the underlying audit data; (2) Chodor's methodology for calculating damages does not account for Ruby Tuesday's alternative explanations; and (3) Chodor's opinions incorporate legal conclusions.[3]

The governing standard is a flexible one. After reviewing the underlying reports, I do not find that Chodor's testimony must be excluded. As a basis for his opinion, he was entitled to rely on the audits. The underlying facts are of course subject to proof (and to attack) based on the testimony of witnesses and documentary evidence. Chodor's methodology for calculating damages meets the reliability requirement of Rule 702 and *Daubert*. What Ruby Tuesday calls "legal conclusions" are really this damages expert's assumptions as to the substance of a breach of contract claim that may (or may not) be established at trial. Therefore, Ruby Tuesday's motion is denied.

    1.  *The Wiss Reports*

Lawrence Chodor, assisted by Joseph L. Ottaiano, CPA, issued three reports. The first, entitled "Economic Damages Report," is dated August 15,

---

[3]     Ruby Tuesday does not challenge Mr. Chodor's qualifications or the relevance of his testimony. Chodor appears to be well credentialed as, *inter alia,* an accountant and forensic financial analyst.

2011. ("Wiss Report"[4] at 1, Ex. M to DSMF [ECF No. 15-18]). In that first report, Chodor concludes that Ruby Tuesday's breach of contract caused USAM total economic damages of $1,143,683. (*Id.*). My analysis focuses on this report.

In preparing the Wiss Report, Chodor spoke to the principals of USAM and RCG, who prepared the audits, and also reviewed and relied upon numerous documents, including the pertinent leases, agreements, settlements, emails and correspondence. (*Id.* at 8-10 (listing documents)). The report assumes the validity of the allegations of contractual breach – *i.e.*, that Ruby Tuesday used the audits to bring about the Simon Property Settlement and did not fully pursue the claims uncovered by the General Growth audit, in violation of the parties' agreements. (*Id.* at 3).

The component of the plaintiffs' damages resulting from the Simon Property Settlement, as calculated in the report, totals $776,183. (*Id.* at 4). To reach that figure, Chodor started from the value of the rent payments Ruby Tuesday would have been obligated to make over the remaining term of the cancelled leases. This figure he discounted to a present value by applying a risk-free (20-year Treasury bond) rate of return. From that discounted figure Chodor subtracted the amount that Ruby Tuesday had already paid Simon Property in connection with the settlement. (*Id.* at 3). The difference between the value of what Ruby Tuesday would have paid on the leases and what it did pay in the settlement amounted to $1,552,365. From this figure Chodor took 50%, RCG's share under the contingent fee portion of the agreement. (*Id.* at 3, 4).

The component of the plaintiffs' damages resulting from the General Growth Settlement is calculated at $367,500. (*Id.*). Here, Chodor took at face value the audit's conclusion that Ruby Tuesday had a claim against General Growth in the amount of $900,000, and assumed that Ruby Tuesday's failure to pursue that claim gave rise to liability. Pursuant to the 50% contingent fee arrangement, USAM would have been entitled to $450,000. From that figure, however, Chodor subtracted the $82,500 that Ruby Tuesday had already paid USAM in connection with the General Growth settlement. (*Id.* at 3-4).[5]

---

[4]   Chodor and Ottaiano are affiliated with Wiss & Company, LLP. I follow the parties in referring to this as the "Wiss Report." For simplicity, I refer to the expert witness as Chodor, but the substitution of Ottaiano would not alter the analysis.

[5]   Chodor issued a Supplemental Economic Damages Report dated August 23, 2011. That report adjusts the calculation of USAM's damages upward to $1,238,745.

## 2. *Chodor's Use of the Audits and Related Challenges*

Ruby Tuesday argues primarily that Chodor's opinion is invalid because it relies on the USAM and RCG audits without verification or analysis. In Ruby Tuesday's view, the Agreements entitle USAM and RCG, not to a share of all savings on the relevant leases, but only to amounts Ruby Tuesday saved *as a direct result* of the audits. Ruby Tuesday also disagrees with Chodor's use of a low, "risk-free" discount rate to calculate the present value of future lease payments. These errors, claims Ruby Tuesday, render Chodor's testimony unreliable and therefore inadmissible. I disagree.[6]

*First,* I find that Chodor's reliance on the USAM and RCG audits satisfies the requirements of Rule 702. Such audits are no different from other sources commonly relied on by experts in the field. (I also note that the audits were not the entire factual foundation for Chodor's calculation of damages.)

An "expert's testimony must be accompanied by a sufficient factual foundation . . . ." *Gumbs v. Int'l Harvester, Inc.,* 718 F.2d 88, 98 (3d Cir. 1983); *see Elcock v. Kmart Corp.,* 233 F.3d 734, 755 (3d Cir. 2000) (damage calculations require a sufficient factual foundation). That foundation, however, need not consist of admissible evidence:

> An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed. If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted.

---

(Wiss Supplemental Report, at 1, Ex. O to DSMF [ECF No. 15-21]). This second report differs from the first in that, for the Simon Property component, it applies a 3% inflation factor to each of the annual expense recovery amounts, and, for the General Growth Mizner Park leases, it adds $25,000 in claims per year for 2008, 2009 and 2010. (*Id.*). Chodor's third and final report, dated October 10, 2011, responds to Ruby Tuesday's expert reports. (Wiss Reply Report, Ex. 4 to Chodor Dep., Ex. P-1 to DSMF at 225-231 [ECF No. 15-22]). These two additional reports do not alter the analysis of the Rule 702 issue, *infra* at Section III.A.2-4.

[6]    In analyzing this issue, I am additionally inclined to grant some latitude because the sole issue is damages, as to which New Jersey law does not require absolute precision. *See, e.g., Tessman v. Grosner,* 23 N.J. 193, 128 A.2d 467 (1957) ("If the evidence affords a basis for estimating the damages with some reasonable degree of certainty, it is sufficient.").

Fed. R. Evid. 703; *see Daubert*, 509 U.S. at 592 ("an expert is permitted wide latitude to offer opinions, including those that are not based on firsthand knowledge or observation"). To put it another way, the information relied on by the expert need not itself satisfy the *Daubert* requirements. *See id.* at 593-95.

Here, Chodor reviewed and relied upon the USAM and RCG audits themselves, interviews with the principals, and various documents, including the pertinent leases, agreements, settlements, emails and correspondence. (*See* Wiss Report at 8-10, Ex. M to DSMF [ECF No. 15-18]). The audits were conducted by USAM and RCG, professionally qualified firms. Ruby Tuesday commissioned the audits and seemingly relied upon them for its own business purposes, including the extraction of concessions from its landlords. As professional assessments of the validity, or not, of the landlords' charges under the leases, they were relevant to Chodor's formulation of his opinion as to damages. While Chodor concededly did not personally verify the audits, he was not required to do so. His brief was limited: assuming the results of the audits to be valid, he was to calculate what damages would result. Of course the plaintiffs will have to establish liability, as well as damages, but they are entitled to make their case one witness at a time. As USAM and RCG point out, fact witnesses will establish (at this procedural stage, I would say *attempt* to establish) the foundation of the audits. Attacking the factual foundations of an expert opinion is the ordinary stuff of cross-examination at trial.   If the plaintiffs' proofs fail to convince the fact finder of the validity of the audits, then Chodor's calculations of damages may likewise fail.[7]

---

[7]    Ruby Tuesday's principal cases are distinguishable. *Paoli* disallowed medical testimony based on the "plaintiff's self-report of illness in preparation for litigation." 35 F.3d at 762. That is not the case here – the audits were prepared for Ruby Tuesday to use in obtaining refunds from landlords for overcharges, not for the present suit. In addition, the Wiss Reply Report explained why Chodor's conclusions were reliable; no such explanation existed for the testimony excluded in *Paoli. See id.* at 763.

In *Chemipal Ltd. v. Slim-Fast Nutritional Foods Int'l, Inc.*, an opinion from the District of Delaware, the court barred a damages expert from testifying because, to calculate lost profits, he blindly relied upon a third party's sales estimates and essentially made up estimates of yearly growth of the market. 350 F. Supp. 2d 582, 589-594 (D. Del. 2004). Chodor, by contrast, reviewed the audits and numerous other documents, and he interviewed the individuals that prepared the audits. In addition, USAM has indicated that its principals will testify as to the factual foundation of the audits. Chodor's calculation of amounts *actually* overcharged is a far cry from the *Chemipal* expert's estimate of hypothetical profits that would have been realized if the company had spent a certain amount on marketing and reached its market share goal.

*Second,* I cannot find that that Chodor's opinions are inadmissible merely because they are inconsistent with Ruby Tuesday's interpretation of the USAM and RCG Agreements. Ruby Tuesday views the Agreements as requiring payment only for dollar savings that were the direct result of the audits. The relevant provision of the USAM Agreement (incorporated in the RCG Agreement), however, is not so clearly limited. It states that the auditors' "remuneration is contingent and based upon a realization in fact by [Ruby Tuesday] of refunds made by landlords . . . predicated upon information documented by [USAM] that overcharges in fact occurred." (Ex. A to DSMF at 1). Moreover, the Agreements contain express and implied obligations of good faith cooperation. The RCG Agreement appears also to contain explicit safeguards against Ruby Tuesday's dealing directly with the landlords to circumvent the contingent fee obligation.

This could all mean what Ruby Tuesday says it does. It could also mean, however, that the auditors should be paid based on any benefit Ruby Tuesday extracted from the landlords after USAM or RCG identified overcharges. Or the correct interpretation could be somewhere in the middle. Ultimately, whether Ruby Tuesday is in breach of the payment provision of the Agreements is for the fact finder to decide.

The conclusions of damages experts are quite commonly contingent upon the establishment of liability. Chodor was not unreasonable in calculating damages based on his clients' theory of liability, which, as I have said, remains to be established but is not unreasonable. (*See* Wiss Reply Report at 4). *If* the plaintiffs' interpretation of the Agreements does not prevail, or prevails only in part, then the validity of Chodor's conclusions may suffer accordingly. But that is not a basis to exclude Chodor's testimony.

---

In *In re Wagner*, the court considered whether to exclude the testimony of a forensic pathologist who relied on the opinion of another expert, a toxicologist, to render his own opinion on the identical issue: the blood-alcohol content of the driver who caused the fatal traffic accident. Civ. No. 06-1026, 2007 WL 966010, at *3 (E.D. Pa. Mar. 29, 2007). The toxicologist was not available to testify as to his report. The court noted that if the forensic pathologist were merely parroting the toxicologist's opinion, his testimony would be excluded, but found that not to be the case. *Id.* at *4. Because the pathologist's findings rested on a mix of subjective analysis (i.e., the toxicologist's report) and other objective data, his opinion had value and therefore was not excluded. *Id.* In this case, Chodor is not testifying about the same subject matter – *i.e.,* he is not rendering an opinion on what was or was not an overcharge under the terms of the lease. In any case, the auditors are available to testify as to their findings.

11

Ruby Tuesday contends that the use of two different methodologies renders Chodor's testimony arbitrary and inconsistent, but I do not reach the same conclusion. In one instance, the Simon Property Settlement, Ruby Tuesday allegedly used the RCG audit in negotiations to obtain benefits from the landlord. Chodor used the amount of that settlement as a basis for his damages calculation. As to the General Growth Settlement, the situation is different. Defendants do not claim that Ruby Tuesday directly used the audit to pressure the landlord. Rather, the claim is that Ruby Tuesday failed to fully pursue claims against the landlord, thus denying USAM its contingent share. Different situation, different methodology. The expert's methods may be subject to attack, but that is not a basis to exclude his testimony entirely.

*Third,* I will not exclude Chodor's testimony based on his use of a risk-free rate of return to calculate the present value of future lease payments in connection with the Simon Property Settlement. His report states:

> We do not believe that the use of Simon's cost of capital rate in lieu of the risk-free interest rate is appropriate. In any event, the period included in the Wiss present-value calculation is 2009 through 2015. Based on the current interest rate environment, Simon's 5.69% rate seem[s] high. We believe that Ruby Tuesday's risk of default was low and that a risk free rate is justified.

(Wiss Reply Report at 5). Chodor's decision to use the risk-free rate of return was not arbitrary. Current interest rates are historically low, and have been so for some time. Chodor also noted what he viewed as Ruby Tuesday's low risk of default. To Chodor, a rate of 5.69% was therefore overly generous. May these assumptions be attacked? Certainly. But they meet the standard for admissibility set forth in Rule 702 and *Daubert*.

### 3. *Ruby Tuesday's Alternative Explanations*

Ruby Tuesday argues that Chodor's testimony is unreliable because he does not account for factors other than the audits that may have contributed to the Simon Property and General Growth Settlements.

Chodor addresses this critique in the Wiss Reply Report. He states that these concurrent factors, identified in the report of Gorodesky,

> address the potential mind set of a landlord in a broad sense. It is impossible to attempt to quantify these factors or place relative

weights on them as they pertain to the [Simon Property Settlement]. They are subjective factors and concepts for which neither the RAS Report nor the Marcum Report can place a value. . . . Their exact impact on the negotiations and ultimately the termination amount is impossible to quantify.

We note that Ruby Tuesday, a major national tenant in a real estate environment of increasing vacancies, would likely find Simon receptive to Ruby Tuesday's CAM audit claims and that Simon would be motivated to resolve the outstanding issues equitably and not attempt to strong-arm or stonewall any negotiation attempts by Ruby Tuesday.

(Wiss Reply Report at 5, Ex. 4 to Chodor Dep., Ex. P-1 to DSMF at 229).

That is a reasonable explanation for Chodor's exclusion of these concurrent factors from his damages calculation. *Paoli*, 35 F.3d at 760.[8] Once again, Ruby Tuesday has identified potential bases to attack Chodor's opinion, not to exclude it.

### 4. The "Legal Conclusions" in the Wiss Report

Ruby Tuesday argues that the Wiss Report is rife with legal conclusions that render Chodor's testimony excludable. The contested statements boil down to two types.

The first type of statement concerns Ruby Tuesday's alleged breach of the Agreements. (*See* Ruby Tuesday Br. at 28 [ECF No. 15-3] (listing statements)). Such statements are not, and are not presented as, Chodor's expert conclusions. They are more properly viewed as assumptions regarding liability on which Chodor based his calculation of damages. Expert opinions on damages commonly assume liability, which must be established independently.

---

[8]     *Magistini v. One Hour Martinizing Dry Cleaning*, 180 F. Supp. 2d 584 (D.N.J. 2002), cited by Ruby Tuesday, is unhelpful here. There, the issue was the cause of the plaintiff's leukemia. Differential diagnosis is an established expert medical procedure, one that requires a quantitative assessment of each exposure that could have caused the illness. *Id.* at 610. So far as I have been made aware, there is no corresponding established methodology for the analysis of lease negotiations. And indeed, even Ruby Tuesday's expert reports merely list confounding factors, without attempting to quantify the role that each of them played.

The second type of statement relates to the calculation of the auditors' contingent fees. Chodor took the Agreements to mean that USAM was entitled to 50% of any savings realized from settlements where the claims in its audit were fully pursued. Where the claims were not fully pursued, USAM was entitled to 50% of the value of the claims uncovered by the audit. That is a reasonable assumption upon which to base a calculation of damages. If the assumption does not pan out before the fact finder, Chodor's opinion may turn out to be worth little. But again, that is a merits issue, not an admissibility issue.

That distinction between the threshold of admissibility and the burden of persuasion must always be kept in mind in the Rule 702 context. "The evidentiary requirement of reliability is not that high." *Pineda v. Ford Motor Co.,* 520 F.3d 237, 247 (3d Cir. 2008 (quoting *In re TMI Litig.,* 193 F.3d 613, 665 (3d Cir. 1999)). "While a litigant has to make more than a prima facie showing that his expert's methodology is reliable, we have cautioned that '[t]he evidentiary requirement of reliability is lower than the merits standard of correctness.'" *Id.* (quoting *Paoli,* 35 F.2d at 744). That "merits standard of correctness" is for the fact finder to consider and apply. Before the fact finder does so, Ruby Tuesday will have the chance to attack USAM's and RCG's figures through cross-examination and the presentation of contrary evidence. *See Daubert,* 509 U.S. at 596.

Rule 702 permits a wide range of testimony as long as the expert is qualified and the testimony is reliable and relevant. Chodor's proffered testimony meets the standard of admissibility under Rule 702. Ruby Tuesday's motion to exclude his testimony will therefore be denied.

### B. Ruby Tuesday's Motion for Summary Judgment

Ruby Tuesday has moved for summary judgment because, in its view, once Chodor's testimony is excluded, the plaintiffs cannot make an adequate showing of damages. Without proof of damages, the plaintiffs' cause of action for breach of contract would be lacking an essential element.

Because I have found that Chodor's testimony should not be excluded, *see supra* III.A., the basis for Ruby Tuesday's motion drops out. *See Murphy v. Implicito,* 392 N.J. Super. 245, 265, 920 A.2d 678, 689 (App. Div. 2007). Summary judgment in favor of Ruby Tuesday is therefore inappropriate, and its motion is denied.

### C. USAM's Cross-Motion to Exclude Ruby Tuesday's Expert Reports

The plaintiffs, USAM and RCG, have cross-moved to exclude Ruby Tuesday's proffered expert testimony, previewed in two expert reports. First, the plaintiffs argue that the RAS Report, prepared by Ronald Gorodesky, is not relevant because it discusses factors generally at play in landlord-tenant negotiations without tying them to the particulars of this case. Second, the Marcum Report, written by David Glusman, relies on the RAS Report. Once the RAS Report is excluded, say the plaintiffs, the Marcum Report must also fall out of the case.[9]

The crux of the plaintiffs' case is that Ruby Tuesday used or should have used the USAM and RCG audits to prise favorable settlements from Simon Property and General Growth. Ruby Tuesday, however, contends (*inter alia*) that factors independent of the audits led to, or contributed to, these settlements. Identification of such other factors would therefore be relevant to this dispute.

The RAS Report is dated September 11, 2011. (RAS Report, Ex. L to DSMF [ECF No. 15-17]). In it, Gorodesky cites seven factors that a landlord considers when negotiating the early termination of a tenant's lease in return for a lump sum payment. (*Id.* at 2-3). The Report also states that the discount a tenant tends to receive, expressed as a percentage of total future rent due, varies widely from 10% to 90% but is typically 40-50%. (*Id.* at 4). As noted by the plaintiffs, Gorodesky does not connect these general principles to the settlements between Ruby Tuesday and Simon Property/General Growth or to any other fact specific to this case. In the plaintiffs' view, this renders the report irrelevant and inadmissible.

The Advisory Committee Notes to Rule 702 explicitly authorize an expert opinion as to general principles:

> [I]t might also be important in some cases for **an expert to educate the factfinder about general principles, without ever attempting to apply these principles to the specific facts of the case**. For example, experts might instruct the factfinder on the principles of thermodynamics, or bloodclotting, or on how financial

---

[9]    The plaintiffs do not challenge the qualifications of Ruby Tuesday's experts. Glusman appears to be well credentialed as, *inter alia,* an accountant and forensic financial analyst. Gorodesky is the president of a restaurant business consulting firm, Restaurant Advisory Services, Inc.

markets respond to corporate reports, without ever knowing about or trying to tie their testimony into the facts of the case. The amendment [codifying the reliability standards in *Daubert* and *Kumho Tire*] does not alter **the venerable practice of using expert testimony to educate the factfinder on general principles**. For this kind of generalized testimony, Rule 702 simply requires that: (1) the expert be qualified; (2) the testimony address a subject matter on which the factfinder can be assisted by an expert; (3) the testimony be reliable; and (4) the testimony "fit" the facts of the case.

Fed. R. Evid. 702 (comments addressing 2000 Amendments) (emphasis added).

Gorodesky's testimony fits within the principles outlined in the quoted Comments to Rule 702. First, USAM does not challenge Gorodesky's qualifications, and Ruby Tuesday highlights his experience in the restaurant and real estate industries. Second, the RAS Report addresses the factors at play in landlord-tenant lease negotiations and the amount of savings a tenant may achieve in terminating a lease early, matters that may be helpful to the fact finder. Third, his testimony is reliable because it is grounded in his experience in the industry. *See, e.g., Kumho Tire*, 526 U.S. at 151 (Rule 702 encompasses experience-based, as well as academic, expertise). Fourth, the general principles he recites are relevant to the case because Ruby Tuesday alleges that factors other than the audits contributed to the Simon Property and General Growth Settlements. Accepting *arguendo* for purposes of this cross-motion that Ruby Tuesday's view of the Agreements is correct (as I accepted the plaintiffs' view on the main motion), the compensation of USAM or RCG may be reduced to the extent that other factors contributed to the settlements with the landlords. The same caveat that applies to the plaintiffs' reports applies here: Ruby Tuesday's view of the Agreements might or might not prevail; Ruby Tuesday might or might not prove, through other evidence, that such factors did *in fact* influence the negotiations. But the RAS report, in combination with other proofs, is relevant and helpful, and therefore admissible. The cross-motion of USAM and RCG to exclude the RAS report is therefore denied.

The plaintiffs' argument that the Marcum Report should be excluded is premised on the exclusion of the RAS Report. For the reasons stated above, the RAS Report will not be excluded. Therefore, USAM's cross-motion to exclude the Marcum Report is also denied.

## IV.    CONCLUSION

For the reasons stated above, (1) Ruby Tuesday's Motion to Preclude Expert Testimony and for Summary Judgment and (2) USAM's and RCG's Cross-Motion to Exclude Expert Testimony are **DENIED**.

KEVIN MCNULTY
United States District Judge

Dated: April 26, 2013