UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| U.S. ACCU-MEASUREMENTS, LLC and ROSS CONSULTING GROUP, INC., <br><br> Plaintiffs, <br><br> v. <br><br> RUBY TUESDAY, INC., <br><br> Defendant. | Civ. No. 10-5011 (KM) <br><br> **OPINION AND ORDER** |

## KEVIN MCNULTY, U.S.D.J.:

Before me are two motions *in limine* filed by the defendant, Ruby Tuesday, Inc., in advance of the imminent jury trial in this matter. Defendant requests, in its first motion, that I preclude the plaintiffs, U.S. Accu-Measurements, LLC and Ross Consulting Group, Inc., from offering evidence or argument related to their demand for punitive damages. Defendant requests, in its second motion, that I preclude Plaintiffs from offering evidence or argument related to their claim for unjust enrichment. For reasons discussed briefly *infra*, I will **GRANT** Defendant's first motion and **DENY** its second motion. Both rulings are, however, subject to revision depending upon the evidence at trial.

This case concerns two written agreements between Plaintiffs and Defendant, pursuant to which Plaintiffs prepared comprehensive audit reports assessing whether Defendant had paid the correct amount of common area maintenance ("CAM") to its landlords at malls nationwide. (Final Pretrial Order at ¶ 3 (Doc. No. 37)). Under those contracts, Defendant is to pay Plaintiffs for such auditing services "only when, as and if refunds and cost reductions are realized, as received by [Defendant], and whether in cash, kind, or by way of rental credit." (Contract, Pltf.'s Tr. Br. at Ex. 1 (Doc. No. 42). The contracts set Plaintiffs' fee as either 25 percent or 50 percent of Defendant's gross recovery of CAM overpayments to its landlords, depending on certain circumstances. (*Id.*). Plaintiffs' central allegation in this dispute is that Defendant used the audit reports to arrive at settlements with its landlords that included refunds of CAM overcharges, but that Defendant never paid Plaintiffs' fee or even informed Plaintiffs that such settlements had occurred. (Pltf.'s Tr. Br. at 2). Plaintiffs' causes of action are: 1) breach of contract, 2) breach of the covenant of good

faith and fair dealing, 3) unjust enrichment, and 4) accounting. (Complaint (Doc. 1-1)). Plaintiffs' good faith and unjust enrichment claims include a demand for punitive damages. (*Id.*).

## I. Motion to Exclude Punitive Damages

Defendant contends that its potential liability has been premised solely on alleged breaches of its contracts with Plaintiffs, and not on any other duty. Punitive damages, it says, are unavailable as a matter of law. (First Motion (Doc. 48)). Plaintiffs respond that punitive damages for breach of contract are available when the parties were in a special relationship of trust, as in the case of a joint venture. (Opposition to Motions (Doc. No. 51)).

As a general rule—and the parties agree on this much—punitive damages are not generally recoverable upon a breach of contract, unless the breach also constitutes a tort. *Lightning Lube v. Witco Corp.*, 4 F.3d 1153, 1194 (3d Cir. N.J. 1993) (citing *W.A. Wright, Inc. v. KDI Sylvan Pools, Inc.*, 746 F.2d 215, 217 (3d Cir. 1984) and Restatement (Second) of Contracts § 355 (1979)). Plaintiffs cite some authority that a breach of contract that also constitutes a breach of fiduciary duty may warrant punitive damages even if no separate claim of a fiduciary breach has been asserted. *See Sandler v. Lawn-A-Mat Chemical & Equipment Corp.*, 141 N.J. Super. 437, 449-451 (App. Div. 1976) ("There may arise a case involving such an aggravated set of facts that punitive damages might be appropriate regardless of the contract form of the cause of action and even though it may be beyond the scope of recognized exceptions...").

Plaintiffs have never indicated, outside of their opposition to this motion *in limine*, that Defendant breached a fiduciary duty, or that the parties were in a fiduciary relationship. The complaint does not assert any cause of action for breach of fiduciary duty. I might overlook that in accordance with the dicta in *Sandler*. The trouble is that the complaint also lacks any factual allegations suggesting that the parties are joint venturers, or indeed that they stand in any relationship of trust. In the complaint, Plaintiffs refer to themselves as "vendors." (*See* Doc. No. 1-1). Likewise, Plaintiffs' trial brief does not contain any factual assertion or argument that the parties stood in a special or fiduciary relationship. Plaintiff's claims and arguments are all rooted in the parties' status as contracting parties and in Defendant's alleged failure to abide by the contract. (*See* Doc. No 42). The Final Pretrial Order does not list, as an issue for trial, whether the parties stood in a special, fiduciary, or joint venturer relationship (*see* Doc. No. 37 at ¶¶ 4, 9). The PTO does not so much as mention this issue specifically, or the issue of punitive damages generally. (*See id.* at ¶¶ 4.A.2, 9).

Even adopting *arguendo* the relaxed standard set forth in dicta in *Sandler*, I cannot find any cognizable allegation or showing of a special relationship of trust. For all that appears in the papers before me, punitive

2

damages are unavailable as a matter of law. Evidence going *exclusively* to the issue of punitive damages would therefore be irrelevant. *See Sandler*, 141 N.J. Super. 437, 451-52.

The motion *in limine* is granted, at least provisionally. Of course, much evidence relevant to punitive damages would also be relevant to show a contractual breach or ordinary damages. Such dual-purpose evidence is not excluded by this ruling.

I say "provisionally" for the following reasons. It is possible that the evidence as presented might suggest a basis for an award of punitive damages. But even if I now thought punitive damages were properly in the case, I would bifurcate the issues and try the punitive damages case separately, if and when the jury found liability and ordinary damages. Therefore, at the close of the evidence or after the jury's verdict, the Plaintiffs may if appropriate move to reconsider this ruling and reopen the proofs for the purpose of considering punitive damages.

## II. Motion to Exclude Unjust Enrichment

Defendant argues that there can be no recovery under a theory of unjust enrichment, or quasi-contract, because there is a valid, express contract that covers the same subject matter. There is no dispute that there exists a written contract governing Plaintiffs' provision of auditing services. (Second Motion (Doc. No. 49)). Therefore, Defendant argues, evidence and argument relating to Plaintiffs' unjust enrichment claim must be excluded from the trial. Plaintiffs respond that they are free to argue and submit both express and quasi-contract theories to the jury—they simply may not recover under both. Whether the written contract governs this dispute, they say, may remain open as an issue for the jury. In addition, quantum meruit recovery may occur even where a contract is present, if performance is incomplete. (Opposition to Motions (Doc. No. 51)).

This motion requires me to reconcile three partially overlapping principles.

The first principle, cited prominently by Plaintiffs, permits the submission of inconsistent theories to the jury:

> a plaintiff who has attempted to prove both breach of contract and unjust enrichment need not choose which one will go to the jury, as long as there is sufficient evidence as to both. Under proper instructions from the judge, the jury may decide which of the two was proved, and plaintiff will be able to recover under one of the theories. It is only recovery under inconsistent theories that is not permitted.

3

*Caputo v. Nice-Pak Products, Inc.*, 300 N.J. Super. 498, 504 (App. Div. 1997). As a general matter, this rule aligns with the provisions of Federal Rule of Civil Procedure 8(a) and 8(d) permitting parties to set forth inconsistent theories and seek inconsistent forms of relief.

In *Caputo*, the plaintiff was the inventor of a patented product allegedly used by defendant, his former employer, without proper compensation to plaintiff. Plaintiff argued that an agreement to assign the invention in exchange for $1.00 and "other good and valuable consideration" incorporated an oral promise to pay a ten percent royalty on sale. Defendant denied this. At trial, the court forced plaintiff to present only one theory to the jury, so plaintiff dropped his contract claim and elected to rely on a quantum meruit claim. At the close of the evidence, the trial court entered a directed verdict against plaintiff on his quantum meruit claim. The Appellate Division, affirmed the directed verdict denying quantum meruit and held that the parties did not have a contract. *Id.* at 505-507. But in dictum, the Appellate Division essentially stated that both the breach of contract claim and quantum meruit claim, if supported by sufficient evidence, could have been presented to the jury. *Id.* at 504-505 ("Plaintiff correctly contended before the trial court that, if the jury found that there was no valid contract, the jury could then consider whether plaintiff nonetheless might recover for unjust enrichment[.]") Thus, if there is a sufficient factual basis to submit both a breach of contract and quantum meruit recovery to the jury, then the jury may be charged as to both. *See id.; see also Don Corson Constr. Co. v. Hrebek*, 2007 N.J. Super. Unpub. LEXIS 759, *17-18 (App. Div. June 5, 2007) (citing *Caputo* and holding that "the court correctly decided that the quantum meruit claim should proceed to the jury.") It is only duplicate recovery that is prohibited.

The second principle, also cited by Plaintiffs, authorizes quantum meruit where a plaintiff who has rendered part performance seeks restitution:

> Where the defendant fails or refuses to perform his contract and is justified therein by the plaintiff's own breach of duty or non-performance of a condition, but the plaintiff has rendered a part performance under the contract that is a net benefit to the defendant, the plaintiff can get judgment for the amount of such benefit…if [] the defendant, with knowledge that the plaintiff's breach of duty of duty or non-performance of condition has occurred…assents to the rendition of the part performance, or accepts the benefit of it, or retains property received although its return in specie is still not unreasonably difficult or injurious.

*Power-Matics, Inc. v. Ligotti*, 79 N.J. Super. 294, 306-07 (App. Div. 1963) (citing 2 *Restatement, Contracts*, § 357, p. 623). *See also Kutzin v. Pirnie*, 124 N.J.

4

500, 515-516 (N.J. 1991). Within the *Power-Matics* framework, the question is whether Defendant may be obliged to pay for the service Plaintiffs actually performed, even if Defendant's duty to pay has not arisen under the terms of the governing contract.

The third principle, cited by Defendants, prohibits the use of quasi-contract to undermine or contradict an express contract:

> Quasi-contractual liability will not be imposed [] if an express contract exists concerning the identical subject matter. The parties are bound by their agreement, and there is no ground for implying a promise as long as a valid unrescinded contract governs the rights of the parties.

*Suburban Transfer Service, Inc. v. Beech Holdings, Inc.*, 716 F.2d 220, 227 (3d Cir. 1983). That rule has particular application to contracts, like this one, for the provision of services:

> where parties have made an express contract for, e.g., the performance of services, and that express contract has not been either rescinded by consent or materially breached, recovery is not available on a theory of implied contract; a subsisting contract for the performance of services in exchange for an agreed price is inconsistent with an implied contract or a quasi-contractual obligation to compensate the same services upon some different basis.

*Farese v. McGarry*, 237 N.J. Super. 385, 392 (App. Div. 1989)(citing *Shapiro v. Solomon*, 42 N.J. Super. 377, 383-385 (App. Div. 1956))(cited in *Caputo* at 504).

*Farese* itself, however, permitted a quasi-contract claim, because the claim did not relate to the "same services" as the parties' express contract. There, the plaintiff, a tenant, brought a quasi-contract claim after making improvements to the house he rented from the defendant landlord. The landlord claimed that any quasi-contract claim for the value of the additional work was precluded by the written lease, which defined the scope of renovations: "Tenant agrees to keep the premises in good repair following the Tenant's completion of all the renovations *in the kitchen and linen closet as agreed to by the parties prior to the signing of this agreement*. The Landlord will be responsible for the cost of all material and supplies used and necessary for the agreed upon renovations (not to exceed $500)." *Id.* at 392-393 (emphasis added). The court applied the rule that a quasi-contract claim cannot operate where an express contract covers the same subject matter: "If the lease had stated that the tenant would renovate the house as part of his rental obligation, he could not have recovered for [the] value [of the renovations] on a quasi-

5

contract theory." *Id.* at 393. But it then drew a distinction between the kitchen/linen closet renovations contracted for in the lease and the additional, extra-contractual work that Plaintiff performed on other portions of the house. The contract (*i.e.*, the lease) did not address renovations to areas beyond the kitchen and linen closet. Plaintiff's unjust enrichment claim, then, was separate, and did not conflict with the terms of the contract. Plaintiff was entitled to assert and recover on that unjust enrichment claim. *Id.* at 392-33.

Within the *Farese-Suburban Transfer* framework, then, the question is whether the written contract, which both parties acknowledge, governs the precise services that were in fact rendered.

The written contract here appears to fully govern the auditing services provided by Plaintiffs, as well as the remuneration therefor. Without more, it would run afoul of the third principle.

That said, however, some versions of the facts in this case suggest that quantum meruit might be appropriate under the second, restitutionary principle. Defendant's primary theory is that its duty to pay did not arise because it never used the audit reports to obtain CAM refunds as contemplated by the contract. (Dfd.'s Tr. Br. at 8-11). Rather, having failed to recover CAM overpayments, it engaged in more global negotiations to cancel the leases. (*Id.* at 3-5). Plaintiffs meanwhile argue that CAM overpayment refunds were embedded in Defendant's lease cancellation settlements; alternatively, Plaintiffs contend that the audit reports were used for either factual background or for leverage in obtaining such settlements (Pltf.'s Tr. Br. at 10, 14).

There are thus contested factual issues surrounding these settlements. A jury might find that CAM refunds were embedded in the settlements, and conclude that there was a breach of, *e.g.*, the contractual covenant of good faith and fair dealing. If the jury finds no such breach, it might nevertheless conclude that the audits benefited Defendant in a way that would justify quantum meruit recovery under the logic of *Power-Matics*, 79 N.J. Super. at 306-307 (permitting restitution of benefits conferred notwithstanding existence of contract) or possibly even *Farese*, 237 N.J. Super. at 392 (permitting quantum meruit recovery where no contractual term addresses the precise service rendered).

In short, the issue is not so clear cut that I can withdraw it from the jury's consideration in advance of the presentation of the evidence. Whether to present the jury with inconsistent theories is a strategic, not a legal, question. The second motion *in limine* is therefore **DENIED**.

Here, too, however, I caution the parties that the issue might be revisited at some point, depending upon the evidence. Under *Caputo* or more general procedural principles I will assess, at trial's end, whether there is sufficient evidence to instruct the jury on breach of contract, quantum meruit, or both.

# ORDER

**THIS MATTER** having been opened to the Court by Defendant on its motions *in limine* [Doc. Nos. 48, 49] to preclude the introduction of evidence and argument concerning Plaintiffs' demands for punitive damages and Plaintiffs' unjust enrichment cause of action; and the Plaintiffs having opposed such motions [Doc. No. 51]; and this Court having considered the papers before it pursuant to Federal Rule of Civil Procedure 78(b); for the reasons stated above, and for good cause shown;

**IT IS** this 14th day of January, 2014

**ORDERED** that Defendant's First Motion *in Limine* to preclude introduction of evidence and argument concerning punitive damages is **GRANTED**; and it is further

**OREDERED** that Defendant's Second Motion *in Limine* to preclude introduction of evidence and argument concerning unjust enrichment is **DENIED**.

_____
HON. KEVIN MCNULTY
United States District Judge

Dated: January 14, 2014
Newark, New Jersey